# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD ROBINSON,
            *Plaintiff-Appellee,*

v.

MARGARET YORK; WILLIAM NASH;
VICTOR TURNER,
            *Defendants-Appellants.*

No. 07-56312

D.C. No.
CV-06-02409-GAF

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
November 20, 2008—Pasadena, California

Filed April 27, 2009

Before: Richard D. Cudahy,* Harry Pregerson, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

4903

**COUNSEL**

Jin Suk Choi (presented arguments and authored briefs), Franscell, Strickland, Roberts & Lawrence, Glendale, California, for the defendants-appellants.

Sanjay Bansal (presented arguments) and Michael A. McGill (authored brief), Lackie & Dammeier, Upland, California, for the plaintiff-appellee.

**ORDER**

Appellee's request for publication is GRANTED. The Memorandum disposition, filed January 8, 2009, is withdrawn. A published Opinion will be filed concurrently with this Order.

**OPINION**

HAWKINS, Circuit Judge:

Plaintiff Richard Robinson ("Robinson"), a sergeant with the Los Angeles County Office of Public Safety ("OPS"), filed a civil rights complaint under 42 U.S.C. § 1983 against

the County of Los Angeles ("Los Angeles") and several OPS officers ("Defendants") alleging that he was denied promotion in violation of his First and Fourteenth Amendment rights because he reported misconduct within his department. Defendants appeal from the denial of qualified immunity. For the reasons that follow, we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Robinson alleges that he was not promoted because he spoke out or filed reports about misconduct in his department between 2002 and 2006. In addition to testifying in a class action lawsuit alleging discrimination by OPS, Robinson also filed misconduct reports pertaining to various problematic behavior, some of which he observed while off duty. The reports described (1) a fellow officer who allegedly worked for an outside employer while on the clock, (2) officers who appeared to be drinking alcohol during work hours, (3) OPS officers who wore distinctive tattoos possibly indicative of anti-Semitic attitudes, (4) cases of potential battery or excessive force, and (5) a "Parking for Irish Only" sign allegedly placed by OPS officers and directed at a fellow officer. After failing to receive what he considered an adequate response from OPS, Robinson took several steps following-up on these reports, including emailing internal affairs and discussing the details of the complaints with superior officers.

Robinson alleges that he participated in several conversations in which his superior officers suggested he stop filing misconduct reports. In one such conversation, a supervising officer told him that "if [Robinson] didn't bring so many issues forward . . . maybe that would help in terms of getting promoted to lieutenant."

Robinson took an examination for promotion to lieutenant in 2003. Despite placing in the highest band of candidates and receiving favorable work reviews, Robinson was not promoted before the eligibility list expired in 2006.

After failing to obtain a promotion, Robinson filed this action alleging that he had been denied promotion in retaliation for exercising his First Amendment rights. Defendants moved for summary judgment, arguing that Robinson's reports were not protected speech because they were made as part of his professional duties or because he failed to present the reports through the chain of command as required by written department policy. The district court denied the motion, finding genuine issues of material fact on the scope of Robinson's job duties and holding that a violation of a written chain of command policy was not dispositive, but merely one of the factors to be considered as part of the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563, 571 (1968). The named Defendants timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We review de novo a district court's denial of summary judgment based upon a claim of qualified immunity. *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998). Although a district court's denial of qualified immunity is subject to immediate appeal as a collateral order, our appellate jurisdiction is limited to questions of law. *Id.* at 843 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 & n.9 (1985)) ("A public-official defendant may appeal the 'purely legal' issue 'whether the facts alleged . . . support a claim of [violation of] clearly established law.' "). "Where disputed facts exist, we assume that the version of the material facts asserted by [the] Plaintiff[ ], as the non-moving party, is correct." *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008). Our review is therefore limited to whether the Defendants would be entitled to qualified immunity as a matter of law assuming all factual disputes were resolved in Robinson's favor.

## III. DISCUSSION

**[1]** Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the

light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (courts may decide which of the two prongs should be addressed first in light of the particular circumstances).

**[2]** In evaluating a First Amendment retaliation claim, we address "a sequential five-step series of questions." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). First, the plaintiff bears the burden of showing: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action."[1] *Id.* Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: "(4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id*. at 1070-73.

## Public Concern

To warrant First Amendment protection, an employee's speech must address "a matter of legitimate public concern." *Pickering*, 391 U.S. at 571. The public concern inquiry is purely a question of law, which we review de novo. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 648 (9th Cir. 2006).

**[3]** As a matter of law, "the competency of the police force

---

[1]We need not address the third question at the summary stage because Defendants concede that there is a material factual dispute regarding whether Robinson's speech was a substantial or motivating factor in the adverse employment action.

is surely a matter of great public concern." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Only speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id.*

Robinson alleges Defendants retaliated against him for, among other things, testifying in a class action lawsuit that the County had engaged in systematic discrimination and harassment against OPS officers, reporting numerous instances of possible corruption, discrimination, or misconduct by fellow OPS officers, and following up on those complaints. With the exception of the three incidents identified by the district court as individual personnel disputes, each of these is clearly a "matter of public concern." *See Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004) ("Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern."); *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995) (citing *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988)) (The "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern."); *see also Connick v. Myers*, 461 U.S. 138, 148 (1983) (speech merits stronger protection when employee seeks "to bring to light actual or potential wrongdoing or breach of public trust").

Defendants concede that some of Robinson's "internal reports of certain alleged misconduct involved matters of public concern," but contend that others did not. They specifically argue that Robinson's follow-up communications pressing his reports of misconduct are not "matters of public concern," citing *Douglas v. Lexington-Fayette Urban County Gov't*, 2007 U.S. Dist. LEXIS 82818, at *18 (E.D. Ky. Nov. 7, 2007), which held that plaintiffs' complaints are not matters of public concern where they are "about the job performance of their coworkers" and "the intent of the plaintiffs [is] not to protect

public safety, but rather to complain about the management's response to the situation."**²**

**[4]** Robinson's misconduct reports, unlike the plaintiffs' speech in *Douglas*, did not merely contain "passing references to public safety [that] were 'incidental to the message conveyed,' " *id.*, but rather related to the danger the misconduct posed and the need to respond to it. Whether OPS treats complaints of misconduct seriously or fails to followup is also a matter of "relevance to the public's evaluation of the performance of governmental agencies" and consequently independently a matter of public concern. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Robinson's email to the office in charge of internal affairs discussing the possibility of an interview about his prior complaints, and his conversations with superior officers reviewing the details of those complaints, clearly addressed at least two matters of public concern: the misconduct itself and the distinct question of whether the investigating officers were, as Robinson argued, sweeping misconduct under the rug.

**[5]** Defendants suggest that two of Robinson's misconduct reports — one regarding an officer suspected of working for an outside employer while on the clock and another alleging discrimination by one officer against another — addressed individual personnel disputes, not matters of public concern. Reports pertaining to others, even if they concern personnel matters including discriminatory conduct, can still be "protected under the public concern test." *Thomas*, 379 F.3d at 808 (explaining that an employee's speech can be protected even though it "concerned a personnel matter" because "it did not pertain to [her] own job status"); *see also Alpha Energy*

---

**²**Defendants also cite *Akins v. Gates*, 2007 U.S. Dist. LEXIS 68439 (N.D. Ga. Sept. 17, 2007), in support of this proposition, but the plaintiffs' speech in *Akins* was in fact held to be on matters of public concern, but was deemed unprotected only because it was included in the plaintiffs' job duties.

*Savers, Inc. v. Hansen*, 381 F.3d 917, 926 (9th Cir. 2004) (holding "invidious discrimination" inherently a matter of public concern "whether it consists of a single act or a pattern of conduct"); *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1201 (9th Cir. 2000) ("Although focused on one employee and not addressed directly to the public, the speech here did concern matters which are relevant to the public's evaluation of its police department.").

**[6]** Robinson's testimony in a class action against the County is also of public concern, regardless of whether it had an impact on the result of that litigation. *Alpha Energy Savers*, 381 F.3d at 927 ("[A] public employee's testimony addresses a matter of public concern if it contributes in some way to the resolution of a judicial or administrative proceeding in which discrimination or other significant government misconduct is at issue — even if the speech itself would not . . . in isolation.").

**Scope of Job Duties**

**[7]** Defendants also argue that Robinson's reports were made in conjunction with his official job duties and therefore were not protected by the First Amendment under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The scope of Robinson's job duties is a question of fact. *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1130 (9th Cir. 2008). "[W]hen there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment . . . until after the fact-finding process." *Id.* at 1131. We lack jurisdiction to review the district court's finding of a genuine of issue of material fact regarding whether the scope of Robinson's duties included reporting police misconduct. *Johnson v. Jones*, 515 U.S. at 319-20. Instead, we assume the resolution of this dispute in the non-moving party's favor. *Eng*, 552 F.3d at 1067.

**Adequate Justification under *Pickering***

**[8]** Under the balancing-test mandated by *Pickering*, 391 U.S. 563, the First Amendment interests of employees must be weighed against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568. "For us to find that the government's interest as an employer in a smoothly-running office outweighs [an employee's] first amendment right, defendants must demonstrate actual, material and substantial disruption," or "reasonable predictions of disruption" in the workplace. *Roth*, 856 F.2d at 1407*; Waters v. Churchill*, 511 U.S. 661, 673 (1994); *see also Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 749 (9th Cir. 2001) (noting that "a showing of actual disruption will weigh more heavily"). "[T]he workplace disruption hurdle for government employers is higher in cases, like this one, where the speech involved unlawful activities rather than policy differences." *Keyser*, 265 F.3d at 749 (citing *Moran*, 147 F.3d at 849 n.6).

**[9]** When applying *Pickering* to an "employee's reports of 'wastefulness, mismanagement, unethical conduct, violations of regulations, and incompetence' " to his supervisors, we have held "that the public's interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer's interest in avoiding a mere potential disturbance to the workplace." *Keyser*, 265 F.3d at 747-48 (discussing *Gilbrook v. City of Westminster*, 177 F.3d 839, 867-70 (9th Cir. 1999); *Roth*, 856 F.2d at 1403-08; and *Johnson*, 48 F.3d at 425-27). In the context of "good-faith whistleblowing" involving reports within a government department rather than to the public, "the breadth of one's audience is irrelevant" because "[i]t would be absurd to extend First Amendment protection only to those whistleblowers who immediately appear on the local news." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001).

**[10]** In the Defendants' view, an exception to this clearly established law applies here because there is "no constitutional violation in requiring officers to communicate 'through channels' before enlisting public opinion to their cause." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). *Sanchez* limited its holding, however, to cases where the "channels" policy "is reasonable and not arbitrary." *Id.* "[E]ven in a police department, the complained-of disruption must be 'real, [and] not imagined' " and the "disruption exception cannot 'serve as a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views.' " *Allen v. Scribner*, 812 F.2d 426, 432 (9th Cir. 1987) (citing *McKinley*, 705 F.2d at 1115); *accord Brockell v. Norton*, 732 F.2d 664, 667 (8th Cir. 1984) (courts cannot "decide in the abstract, however, that a chain-of-command policy designed to protect [a police department's] interest will always take precedence over the interest of a public employee in open communication" and "must look to the particular circumstances of each case to determine the importance of enforcing the chain of command against an employee whose speech breaches that policy").

**[11]** Under some factual circumstances, therefore, the *Pickering* balancing test can favor protected speech even where the speech violates the employer's written policy requiring speech to occur through specified channels. *Anderson v. Central Point School Dist.*, 746 F.2d 505, 506 (9th Cir. 1984); *see also Connick*, 461 U.S. at 153 n.14 (violation of a rule governing the circumstances when speech is permitted would strengthen a claimant's position in the *Pickering* balance, but alone would not be dispositive).

**[12]** Although we have sometimes found a police department's interests in discipline and *esprit de corps* to outweigh First Amendment interests, genuine factual disputes here — including, for example, the extent of potential workplace disruption and whether the justifications Defendants assert for their actions were pretextual — preclude such a determination

at this stage of the litigation. *See, e.g.*, *Cochran*, 222 F.3d at 1196 (city's interest in the proper functioning of its police department outweighed plaintiffs' expressive interests, but only after a detailed factual discussion); *Kannisto v. San Francisco*, 541 F.2d 841, 843-44 (9th Cir. 1976) (noting that "[t]he facts in this case sharply contrast with those in *Pickering*").

**[13]** Given the evidence that Defendants may have been more concerned with the nature and frequency of Robinson's reports of misconduct than his adherence to the formal chain of command, a fact-finder could conclude that Defendants' application of the chain of command policy was pretextual and not based on Defendants' interest in avoiding workplace disruption. If a fact-finder did so conclude, then Robinson's speech interests would outweigh Defendants' interests under *Pickering*. Where, as here, the *Pickering* test must be applied and "there are underlying factual issues regarding the extent of office disruption," it is proper to deny a motion for summary judgment. *Roth*, 856 F.2d at 1408.

## But-For Causation

Defendants may avoid liability by showing that Robinson's protected speech was not a but-for cause of the adverse employment action. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The *Mt. Healthy* but-for causation inquiry is, however, purely a question of fact. *Wagle v. Murray*, 560 F.2d 401, 403 (9th Cir. 1977) (per curium) ("Mt. Healthy indicates the 'trier-of-fact' should determine whether the firing would have occurred without the protected conduct.")

**[14]** Although Defendants are free to argue at trial that they would have taken the same adverse employment actions against Robinson regardless of his speech, Robinson has adequately alleged that the "chain of command" policy was used as a pretext and that the adverse actions against him occurred

because of the content of his protected speech, not the manner in which he filed his complaints. This factual dispute cannot be resolved on summary judgment.

**Clearly Established**

**[15]** Where a "constitutional right would have been violated were [the plaintiff's] allegations established," a court must also determine whether the right was clearly established. *Saucier*, 533 U.S. 194; *see also Pearson*, 129 S. Ct. 808. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).

**[16]** The plaintiff "bears the burden of proving that the rights [he] claims were 'clearly established' at the time of the alleged violation." *Moran*, 147 F.3d at 844. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Notwithstanding this particularity requirement, 'closely analogous preexisting case law is not required to show that a right was clearly established.' " *Hufford*, 249 F.3d at 1148 (citing *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000)).

**[17]** All of the relevant decisions defining the scope of Robinson's constitutional rights were decided well before April of 2005, when Robinson first might have been considered for promotion to lieutenant, giving Defendants adequate notice that their actions would violate those rights. The Supreme Court had decided *Pickering*, establishing that the First Amendment protects employee speech on matters of "legitimate public concern," in 1968. *Pickering*, 391 U.S. at 571-72. It was also already clear that only a "real, not imagined,

disruption" might outweigh the expressive interests of the employee, that this exception cannot serve as a "pretext," and that "employers would be required to make an even 'stronger showing' of disruption when the speech dealt . . . directly with issues of public concern." *McKinley*, 705 F.2d at 1114.

An employer's written policy requiring speech to occur through specified "channels" had been held insufficient to justify retaliation motivated by protected speech. *Anderson*, 746 F.2d at 506. "[M]isuse of public funds, wastefulness, and inefficiency in managing and operating government entities" had been held "matters of inherent public concern." *Roth*, 856 F.2d at 1405.

Therefore, at the time defendants acted in 2005 and 2006, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established and potentially applicable to Defendants' conduct.[3]

The district court's denial of summary judgment is therefore

**AFFIRMED**.

---

[3]Although the Supreme Court recently carved out an exception to this clearly established law for "expressions employees make pursuant to their professional duties" in *Garcetti*, 547 U.S. at 426, *Garcetti* does not affect whether Defendants are entitled to qualified immunity at this stage of the proceedings. Assuming a fact-finder resolves the factual dispute regarding Robinson's job duties in Robinson's favor, the clearly established law that existed at the time Defendants acted will apply, materially unaltered by *Garcetti*.