# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATHLEEN NICHOLS,
  *Plaintiff-Appellant,*

v.

LAURA DANCER; JAMES L. HAGAR;
WASHOE COUNTY SCHOOL DISTRICT,
  *Defendants-Appellees.*

No. 10-15359

D.C. No.
3:04-cv-00559-
LRH-LRL

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
March 17, 2011—San Francisco, California

Filed September 15, 2011

Before: Thomas M. Reavley,* M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Reavley

---

  *The Honorable Thomas M. Reavley, Fifth Circuit Court of Appeals, sitting by designation.

17583

**COUNSEL**

Jeffrey S. Blanck, Esq., Law Office of Jeffrey S. Blanck, Reno, Nevada, for the appellant.

C. Robert Cox, Esq. and Christopher D. Jaime, Esq., Maupin, Cox & LeGoy, Reno, Nevada, for the appellee.

## ORDER

The opinion filed June 24, 2011 is withdrawn and replaced with the accompanying opinion.

With these amendments, Judge McKeown and Judge Paez vote to deny the petition for panel rehearing and Judge Reavley votes to grant the petition for panel rehearing.

Judge McKeown and Judge Paez vote to deny the petition for rehearing en banc and Judge Reavley recommends granting the petition for rehearing en banc.

The full court has been advised of the petition for rehearing and rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and petition for rehearing en banc are denied. No further petitions for en banc or panel rehearing shall be permitted.

## OPINION

McKEOWN, Circuit Judge:

This case tests the bounds of a public employer's right to discharge or demote an employee for taking action on a matter of public concern. Under the balancing test in *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 568 (1968), we have long given public employers significant discretion to discipline employees if their conduct disrupts the workplace. That discretion, however, has

never been unfettered. An employer may not interfere with an employee's First Amendment rights unless there is evidence that the employee's actions have actually disrupted the workplace or are reasonably likely to do so in the future. Simply saying that there has been or will be disruption, without supporting evidence, is not enough. In the face of *Pickering*, the "because I said so" approach is insufficient to establish a reasonable prediction of disruption, let alone actual disruption.

Kathleen Nichols, a former employee of the Washoe County School District ("District"), was forced to take early retirement after attending a school board meeting at which her boss was fired. The District claimed it was concerned that her association with her former boss would create conflicts in the office. Viewing the record in the light most favorable to Nichols, however, it appears the triggering factor in the District's action was simply Nichols's decision to sit next to her boss at the public board meeting, without even speaking to him. Because the District produced no evidence that Nichols's association with her boss actually disrupted the office or her performance, or reasonably threatened to cause future disruption, the District has failed to show that its interests in workplace efficiency outweigh Nichols's First Amendment interests. Accordingly, we reverse the district court's grant of summary judgment in favor of the District.

## I.   BACKGROUND

Nichols worked for the District for nine years. During her last six years, she served as the administrative assistant to Jeffrey Blanck, the District's General Counsel. In this position, Nichols reported directly to Blanck and had a variety of responsibilities related to the District's legal matters, including providing litigation support and managing case files. Nichols and Blanck were friends and would sometimes socialize outside the office.

In late 2003, a dispute developed between Blanck and James Hager, the District Superintendent, over allegations by

Blanck that Hager had misused District funds. On January 16, 2004, Blanck was suspended as General Counsel. Laura Dancer, the head of Human Resources for the District, told Nichols about Blanck's suspension and instructed her that she should no longer take direction from Blanck, but only from Hager or Dancer.

After Blanck was suspended, Nichols was transferred to a temporary position in the Human Resources department, while decisions were made about the future of the General Counsel's office. She got along well with her colleagues in Human Resources and there were no reports of any problems with her work.

On March 23, 2004, the Board of Trustees of the District held a meeting to discuss a variety of matters, including Blanck's employment. The day before the meeting, Dancer informed Nichols that she would be returned to her position in the General Counsel's office, regardless of whether Blanck was fired.

The March 23 meeting was an open, public meeting. Nichols attended because a friend of hers was receiving an award and because she wanted to see if Blanck would keep his job. Nichols sat next to Blanck at the meeting, but did not speak to him. At the meeting, the Board announced that Blanck would not be retained as General Counsel.

The next day, Dancer called Nichols into her office and told her that she would not be returned to the General Counsel's office because she had attended the March 23 meeting and there were questions about her loyalty to the District. Dancer told Nichols that she could remain in Human Resources, where her salary would be frozen, or take early retirement. Nichols chose to retire early.

Following her retirement, Nichols filed a lawsuit under 42 U.S.C. § 1983 against Dancer, Hager and the District (collec-

tively, the "District"), claiming that she had been demoted in retaliation for exercising her First Amendment rights by attending the March 23 meeting and sitting next to Blanck. The District moved for summary judgment, arguing that Nichols's conduct was not entitled to First Amendment protection because it was not related to a matter of public concern and because the District's interests in an efficient workplace outweighed Nichols's First Amendment interests. The district court granted the District's motion, holding that the District's efficiency interests were greater than Nichols's interest in free association.

## II. ANALYSIS

To prevail on her First Amendment claim, Nichols must show that her association with Blanck was constitutionally protected and that it was a substantial and motivating factor in her transfer from the General Counsel's office. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998). Only the first part of this test—whether Nichols's conduct is protected by the First Amendment—is at issue in this appeal.[1]

[1] It is by now black letter law that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). At the same time, however, public employees such as Nichols do not enjoy an absolute right to free speech. *See Brewster*, 149 F.3d at 978. Rather, as the Supreme Court acknowledged decades ago, "the State has interests as an employer in regulating

---

[1]The District moved for summary judgment only on the question of whether Nichols's association with Blanck was constitutionally protected and thus the district court did not reach the second part of the test. On appeal, we do not consider and take no position on whether any constitutionally protected conduct was a substantial and motivating factor in Nichols's transfer from the General Counsel's office.

the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568. To determine whether Nichols's conduct receives First Amendment protection, we must engage in the *Pickering* balancing test,[2] which requires us to seek "a balance between the interests of [Nichols], as a citizen, in commenting upon matters of public concern and the interest of the [District], as an employer, in promoting the efficiency of the public services it performs through its employees."[3] *Id.*

**[2]** In striking the *Pickering* balance, we "must give [public] employers wide discretion and control over the management of their personnel and internal affairs," including "the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch." *Brewster*, 149 F.3d at 979 (internal citation and quotation marks omitted). In broad terms, *Pickering* favors the employer if the employee's conduct "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the [employee's] duties

---

[2]A public employee's conduct falls within the First Amendment's ambit only if it touches on a matter of public concern. *Connick*, 461 U.S. at 145-46. Prior to engaging in the *Pickering* balancing test, therefore, a court must determine whether the conduct at issue involves a matter of public concern. *Id.* Here, the district court held that Nichols's attendance at the March 23 school board meeting constituted expressive conduct touching on a matter of public concern, namely Blanck's allegations against Hager and Blanck's employment with the District. We agree and note that the District does not contest this holding on appeal. The sole question before us is whether the District has established, as a matter of law, that the *Pickering* balancing test tips in its favor.

[3]Although the *Pickering* balancing test is ultimately a question of law, its application often requires resolving underlying questions of fact, such as the extent to which the employee's conduct actually disrupted office operations. *See Eng v. Cooley*, 552 F.3d 1062, 1071-72 (9th Cir. 2009) ("Although the *Pickering* balancing inquiry is ultimately a legal question . . . its resolution often entails underlying factual disputes.").

or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 867-68 (9th Cir. 1999). The employer need not establish that the employee's conduct *actually* disrupted the workplace—"reasonable predictions of disruption" are sufficient. *Brewster*, 149 F.3d at 979 (internal citation and quotation marks omitted).

The fact that public employers have significant leeway to regulate employee speech, however, does not mean that their discretion is without bounds. While acknowledging the importance of workplace efficiency, we have never given public employers carte blanche to retaliate against employees whose conduct does not reasonably threaten to disrupt operations. *See Brewster*, 149 F.3d at 979 (evidence of actual disruption or "*reasonable* predictions of disruption" are required (internal citation and quotation marks omitted)) (emphasis added). *Pickering*, after all, is a *balancing* test—it requires us to weigh efficiency concerns against an employee's legitimate interest in engaging on matters of public concern. *See Pickering*, 391 U.S. at 568. We cannot abdicate this responsibility simply because an employer raises the specter of disruption.

**[3]** Although we accord significant weight to an employer's reasonable judgments about the workplace, an employer cannot prevail under *Pickering* based on mere speculation that an employee's conduct will cause disruption. *See Nunez v. Davis*, 169 F.3d 1222, 1229 (9th Cir. 1999) ("[R]eal, not imagined, disruption is required.") (internal citation and quotation marks omitted). It is no surprise, then, that other circuits have determined that a disruption claim must be supported by some evidence, not rank speculation or bald allegation. *See Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002) ("*Pickering* balancing is not an exercise in judicial speculation."); *Kinney v. Weaver*, 367 F.3d 337, 363 (5th Cir. 2004) ("[E]ngaging in *Pickering* balancing is not like performing rational basis review, where we uphold government action as long as there is some imaginable legitimate basis for

it."). An employer must provide some evidence by which we can measure whether its claims of disruption are reasonable. If the evidence establishes that the employer's interests are reasonably threatened, *then* will we tip the *Pickering* scales in its favor.

**[4]** Because the District moved for summary judgment, we must view the record in the light most favorable to Nichols. *See Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009). Doing so, we find no evidence to suggest that Nichols's association with Blanck actually disrupted the District's operations.[4] Nor is there anything in the record to the effect that their association interfered with Nichols's job performance or negatively affected her relationships with Dancer or other co-workers. Nichols testified that she got along well with Dancer and her colleagues in the human resources department and the record does not reveal otherwise. *See Nunez*, 169 F.3d at 1229 ("A public employer cannot claim disruption of a close personal relationship to cover up animus toward an employee's speech and a desire to silence the employee."). Indeed, nothing supports the dissent's suggestion that Nichols had a "confidential relationship" with Blanck or that any of their "continued communication" was the basis for any claim of disruption.[5] See Dissent at 17595.

---

[4]The District claims that certain legal files "went missing" after Blanck was suspended and suggests that Nichols or Blanck had something to do with their disappearance. Nothing in the record supports this assertion. Apparently, outside counsel that was hired to deal with pending legal matters in Blanck's absence could not find certain files when they arrived at the General Counsel's office following Blanck's suspension. Dancer testified that the files were later located in a file room. There is no evidence that Nichols or Blanck moved the files or had anything to do with outside counsel's delay in locating them.

[5]In a petition for rehearing filed after we issued our initial opinion in this case, the District argued that we misapplied the *Pickering* test by considering only the evidence available to the District at the time that Nichols took early retirement, and by refusing to consider the evidence discovered thereafter. Relying on *Lytle v. City of Haysville*, 138 F.3d 857 (10th Cir.

**[5]** Of course, the District is not required to establish actual disruption, but only reasonable predictions of future disruption. That the District may rely on the possibility of future disruption, however, does not mean that we will rubberstamp its decision based on an assertion that Nichols's association with Blanck might have caused problems or been a reflection of the level of her loyalty to the District. The District did not produce evidence to establish that its predictions of disruption or disloyalty are anything but speculation. The District asserts that Nichols's association with Blanck would have created a conflict because, in the General Counsel's office, Nichols would have had access to information about a wrongful termination lawsuit that Blanck filed against the District after he was fired. In the absence of any evidence of disloyalty, it is pure speculation to claim that Nichols was likely—or even inclined—to divulge this information to Blanck or otherwise misuse it.[6] The record offers no support for the claim that

_____

1998), and *Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997) (en banc), the District takes the position that we must consider all of the evidence uncovered to date when deciding whether the District had adequate support for its conclusion that Nichols had disrupted and that her actions threatened future disruption to the workplace. The District misapprehends the extent of our consideration. We reviewed fully all of the District's discovery evidence, including the evidence uncovered after Nichols took early retirement, but none of that evidence supports the District's claim that Nichols's conduct disrupted the workplace or threatened to do so in the future. We therefore need not and do not decide whether, as a general matter, courts must consider evidence acquired after the adverse employment action when performing the *Pickering* balancing test.

[6]The District places great stock in a phone conversation that Nichols had with Blanck on the day he was suspended, in which Nichols mentioned that outside counsel would be coming into the office to review pending matters. The District asserts that the information about outside counsel was sensitive and that it is reasonable to believe that Nichols would have provided confidential information to Blanck in the future. It is not clear, however, that Nichols was told—or should have known—that the information about outside counsel was confidential. Nichols was never told not to speak to Blanck, only to stop taking direction from him. Nota-

Nichols's contact with Blanck threatened to disrupt the District's operations, or that Nichols was predisposed to cause problems down the road. The District's bare assertions of future conflict are insufficient to carry the day at the summary judgment stage. *See Lindsey v. City of Orrick*, 491 F.3d 892, 900 (8th Cir. 2007) ("Mere allegations the speech disrupted the workplace or affected morale, without evidentiary support, are insufficient."); *Kinney*, 367 F.3d at 363 ("We do not let the governmental defendant prevail, *on summary judgment*, by relying on interests that, viewing the record in the non-movant's favor, are not reasonably threatened in the case.") (emphasis in original); *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996) (employer failed to "provide evidence sufficient to assess the character and weight of [its] interests").

**[6]** The long and short of it is that Nichols is an employee caught in the crossfire between the District and her former boss. In the absence of any evidence that she was disloyal, had disrupted the office or was even reasonably likely to cause disruption in the future—and, viewing the record in the light most favorable to Nichols, there is no such evidence—the District sanctioned her for simply showing up at a public meeting and sitting next to Blanck. Even under the deferential *Pickering* test, this allegation is insufficient to tip the balance in the District's favor. We conclude that the District failed to produce adequate evidence to establish, as a matter of law, that its interests in workplace efficiency outweighed Nichols's First Amendment interest in associating with Blanck. At a

---

bly, the telephone call took place *two months* before the March 23 meeting. Not only was the call never an issue, there is no evidence of any problems during this intervening period. The passage of time free of incident undermines the District's claim that Nichols's conversation with Blanck was a harbinger of future conflict. *See Gustafson*, 290 F.3d at 911 (stating that predictions of disruption were unpersuasive "given that four months had passed without any evidence of ill effects from the speech before [the negative employment action] took place").

minimum, material questions of fact remain on this point. *See Robinson*, 556 F.3d at 825 ("Where . . . 'there are underlying factual issues regarding the extent of office disruption', it is proper to deny a motion for summary judgment" (quoting *Roth v. Veteran's Admin. of Gov't of U.S.*, 856 F.2d 1401, 1408 (9th Cir. 1988)). Accordingly, we reverse the grant of summary judgment in the District's favor and remand to the district court for further proceedings consistent with this opinion.

## REVERSED AND REMANDED.

REAVLEY, Circuit Judge, dissenting:

I would affirm. With the litigation between the District and Blanck pending, I see no constitutional objection to the change of Nichols' position from the legal office where records sensitive to the litigation were located, especially since she sided with Blanck in his conflict with the District Board. Because our prior opinion remanded for the district court to decide the *Pickering* balancing issue, I move to that and agree with the district court's decision that her continued communication and confidential relationship with Blanck justified the legitimate administrative interest in moving her from the legal office. *Pickering* balancing is a question of law, not fact. We should rule and affirm. *See Loya v. Desert Sands Unified School Dist.*, 721 F.2d 279, 281 (9th Cir. 1983).