**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RECYCLE FOR CHANGE,
     *Plaintiff-Appellant*,

    v.

CITY OF OAKLAND, a California
Municipal Corporation,
     *Defendant-Appellee.*

No. 16-15295

D.C. No.
3:15-cv-05093-WHO

OPINION

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted September 13, 2016
San Francisco, California

Filed May 9, 2017

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and John R. Tunheim,* Chief District Judge.

Opinion by Judge Gould

---

 * The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the denial of preliminary injunctive relief in an action brought by Recycle for Change, a California non-profit corporation, alleging that the City of Oakland's ordinance regulating unattended donation collection boxes was inconsistent with the First Amendment.

The panel held that assuming that unattended donation collection boxes constituted protected speech or expressive conduct—an issue the panel did not decide—the plaintiff was unlikely to succeed on the merits of its First Amendment claim. The panel held that because the Ordinance does not, by its terms, discriminate on the basis of content, and there was no evidence that Oakland enacted the Ordinance with an intent to burden plaintiff's message of charitable solicitation or out of any disagreement with that message, the Ordinance was content neutral. Applying intermediate scrutiny, the panel held that the Ordinance plainly served important governmental interests unrelated to the suppression of protected speech. Additionally, the Ordinance was sufficiently narrowly tailored and left alternative avenues of communication for plaintiff to express its message.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Daniel P. Dalton (argued) and Lawrence J. Opalewski, Jr., Dalton & Tomich PLC, Detroit, Michigan, for Plaintiff-Appellant.

Selia M. Warren (argued), Deputy City Attorney; Otis McGee, Jr., Chief Assistant City Attorney; Barbara J. Parker, City Attorney; Office of the City Attorney, Oakland, California; for Defendant-Appellee.

Geoffrey M. Pipoly, Williams Montgomery & John Ltd., Chicago, Illinois; Stephen J. van Stempvoort, Miller Johnson, Grand Rapids, Michigan; for Amicus Curiae Planet Aid, Inc.

Derek P. Cole, Cota Cole LLP, Roseville, California, for Amicus Curiae League of California Cities.

**OPINION**

GOULD, Circuit Judge:

Recycle for Change ("RFC"), a California non-profit corporation, challenges the City of Oakland's ("Oakland") ordinance regulating unattended donation collection boxes ("UDCBs") as inconsistent with the First Amendment. RFC sought a preliminary injunction from the district court, which the court denied. RFC appeals that order. Assuming UDCBs constitute protected speech or expressive conduct—an issue we do not decide—we hold that RFC is unlikely to succeed on the merits of its First Amendment claim because the ordinance is content neutral and survives intermediate

scrutiny. We affirm the denial of preliminary injunctive relief.

**I**

RFC recycles and reuses donated materials for dual purposes: to conserve environmental resources and to raise funds to be donated to various charities. RFC operates UDCBs in Oakland as a method of collecting donated materials from the public. RFC places UDCBs on private property with the property possessor's permission. The revenue RFC generates from its UDCB operations is a significant part of its overall income.

On October 20, 2015, Oakland enacted Ordinance No. 13335 C.M.S. (the "Ordinance"). Adding Chapter 5.19 to the Oakland Municipal Code, the Ordinance created a comprehensive licensing scheme governing the operation of UDCBs within city limits. By its terms, the Ordinance applies only to UDCBs, which it defines as "unstaffed drop-off boxes, containers, receptacles, or similar facility that accept textiles, shoes, books and/or other salvageable personal property items to be used by the operator for distribution, resale, or recycling." Oakland Mun. Code § 5.19.050. With exceptions irrelevant to this case, the Ordinance makes it "unlawful to place, operate, maintain or allow a UDCB on any real property unless the parcel owner/agent and/or operator first obtain[s] an annually renewable UDCB permit from the City." *Id.* § 5.19.060(A). To obtain a permit, an operator must, *inter alia*, pay an application fee that costs about $535, propose a site plan, and obtain at least one million dollars in liability insurance. *Id.* § 5.19.070. The annual license renewal fee is about $246. The Ordinance sets restrictions on box placement location

and size, requires specific periodic maintenance, and prohibits placing a UDCB within one thousand feet of another UDCB. *Id.* §§ 5.19.120, 5.19.130.

RFC sued Oakland, asserting that the Ordinance violates the Free Speech and Equal Protection Clauses of the United States Constitution and Article 1, Sections 2 and 7 of the California Constitution. RFC filed a motion for a preliminary injunction against enforcement of the Ordinance based on the federal constitutional claims only. The district court denied RFC's motion after finding that RFC (1) is unlikely to succeed on the merits on its First Amendment claim because the Ordinance is content neutral and survives intermediate scrutiny, (2) is unlikely to succeed on the merits on its Fourteenth Amendment claim because the Ordinance survives rational basis review, and (3) failed to demonstrate likelihood of irreparable harm. RFC appeals the district court's order with respect to its First Amendment claim only.

## II

This court has jurisdiction to review an order refusing a preliminary injunction. 28 U.S.C. § 1292(a)(1). We review the district court's weighing of the relevant factors for abuse of discretion, but its underlying conclusions of law *de novo*. *See Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 398 (9th Cir. 2015).

"A plaintiff seeking a preliminary injunction must establish that [it] is [1] likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

We consider these factors on a sliding scale, such "that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). RFC contends that the district court erred by concluding that RFC was unlikely to succeed on the merits of its First Amendment claim and would not suffer irreparable injury absent an injunction. Because we reject RFC's first argument, we do not reach the second.

### III

The first step of First Amendment analysis is to determine whether the regulation implicates protected expression. In its briefing, Oakland does not dispute RFC's contention that UDCBs in some respects constitute expression, and so enjoy a measure of protection under the First Amendment. Because we conclude that RFC is unlikely to succeed on the merits of its claim even if that is so, we assume without deciding that the Ordinance triggers First Amendment analysis.

So assuming, we begin from the recognition that charitable solicitations are protected speech. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). The Ordinance impacts to a degree RFC's ability to communicate its charitable solicitations message on private property.

Next, we must ask whether the Ordinance is content based or content neutral. If content based, we review it using strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). If, however, such a law does not "suppress[] expression out of concern for its likely communicative impact," we ordinarily apply intermediate scrutiny (or, as

described below, a version of intermediate scrutiny unique to incidental regulation of expressive conduct).**[1]** *United States v. Swisher*, 811 F.3d 299, 314 (9th Cir. 2016) (en banc) (quoting *United States v. Eichman*, 496 U.S. 310, 317 (1990)); *see also United States v. O'Brien*, 391 U.S. 367, 377 (1968).

## A

A content-based law is one that "target[s] speech based on its communicative content" or "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2226–27. The "crucial first step" in determining whether a law is content based is to "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* at 2227–28 (quoting *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011)). We also apply strict scrutiny if the law is facially neutral but "cannot be 'justified without reference to the content of the regulated speech,' or [was] adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 2227 (quoting *Ward v. Rock*

---

**[1]** We note that although the content-based/content-neutral distinction has in recent years become largely determinative of the applicable level of scrutiny even as to regulation of fully private speech, the distinction originated in specialized areas of First Amendment analysis. *See generally* Daniel A. Farber, *The First Amendment* 23–41 (4th ed. 2014). The Supreme Court has never held that broad, content-neutral censorship of fully private speech would be subject to less than strict scrutiny. *Cf. Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (holding that a "ban [on all speech] cannot be justified even [in] a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech"). For present purposes, however, the content-based/content-neutral distinction governs.

*Against Racism*, 491 U.S. 781, 791 (1989)).   Here, the Ordinance is content neutral because it does not, on its face, discriminate on the basis of content; can be justified without reference to the content of the regulated speech; and there is no evidence that Oakland adopted the Ordinance because it disagreed with the message conveyed by UDCBs.

RFC argues that the Ordinance is content based because an enforcing officer would have to examine a container's message and determine whether the container solicits charitable donations to determine whether a receptacle is subject to the Ordinance's requirements.   We reject this argument for two reasons.  First, it is factually incorrect.  The Ordinance's application is not limited to UDCBs soliciting charitable donations.  It applies to any unattended structure that accepts personal items "for distribution, resale, or recycling." Oakland Mun. Code § 5.19.050.   It does not matter *why* the UDCB operator is collecting the personal items, whether it be for charitable purposes or for-profit endeavors.  The record notes that one of the largest UDCB operators in Oakland is USAgain, a for-profit company.  To enforce the Ordinance, an officer need only determine whether (1) an unattended structure accepts personal items and (2) the items will be distributed, resold, or recycled.

Second, that an officer must inspect a UDCB's message to determine whether it is subject to the Ordinance does not render the Ordinance *per se* content based.  While at times we have used this "enforcing officer" test to explain why a law is content based, *e.g.*, *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1200 (9th Cir. 2016); *S.O.C., Inc. v. Cty. of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998); *Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir. 1998), we—and the Supreme Court—have also cautioned that an

officer's inspection of a speaker's message is not dispositive on the question of content neutrality. *See, e.g.*, *Hill v. Colorado*, 530 U.S. 703, 721 (2000) ("It is common in the law to examine the content of a communication to determine the speaker's purpose. . . . We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct."); *Berger v. City of Seattle*, 569 F.3d 1029, 1052 (9th Cir. 2009) ("Our conclusion that the active solicitation ban is content based *is supported—but not determined*—by the fact that an officer seeking to enforce the active solicitation ban must necessarily examine the content of the message that is conveyed." (emphasis added) (internal quotation marks omitted)). And this is for good reason. The "officer must read it" test cuts too broadly if used "as a bellwether of content. If applied without common sense, this principle would mean that every sign, except a blank sign, would be content based." *See Reed v. Town of Gilbert*, 587 F.3d 966, 978–79 (9th Cir. 2009), *rev'd on other grounds*, 135 S. Ct. at 2232 (2015).[2]

We are left with the following question: does a law that requires an enforcing officer to decide whether a UDCB collects personal items for the purpose of distributing, reusing, or recycling those items—regardless of the purposes of such activity—discriminate on the basis of content? Or, stated another way, does the activity of collecting, distributing, reusing, or recycling personal items—or the

---

[2] While the Supreme Court reversed our court in *Reed*, the Court held only that the sign regulation was content based on its face because its application depended "entirely on the communicative content of the sign." 135 S. Ct. at 2227. It did not adopt, or even discuss, the merits of the "officer must read it" test as a proper content-neutrality analysis.

solicitation of items to further such activity—constitute "communicative content," *Reed*, 135 S. Ct. at 227, against which any hint of discrimination should trigger strict scrutiny? We think not.

The Sixth Circuit's decision in *Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015), is instructive. There, the court determined that the City of St. John's ordinance banning UDCBs collecting charitable donations was content based not because it required enforcing officers to look just at the message a UDCB itself was expressing, but because it required officers to look for a specific message soliciting charitable donations.[3] The court explained that, because the First Amendment protects speech soliciting charitable donations, *see Vill. of Schaumburg*, 444 U.S. 620, the message expressed by UDCBs accepting charitable donations constitutes "content." *See Planet Aid*, 782 F.3d at 324–26.

---

[3] The ordinance in *Planet Aid* did not on its face make any distinction between UDCBs that engage in charitable solicitation and those that do not (such as UDCBs operated by for-profit companies). The ordinance in *Planet Aid* applied to "outdoor, unattended receptacle[s] designed with a door, slot, or other opening that is intended to accept donated goods or items." 782 F.3d at 322. The word "donation" need not have an exclusively charitable connotation. *See* Oxford English Dictionary (defining donation as "[t]he action or faculty of giving or presenting; presentation, bestowal; grant," "[t]he action or right of bestowing or conferring a benefice; the 'gift,'" and "[t]he action or contract by which a person transfers the ownership of a thing from himself to another"), *available at* http://www.oed.com/view/Entry/ 56742?redirectedFrom=donation#eid (last viewed on December 16, 2016). But it is clear from the court's discussion in *Planet Aid* that it interpreted the ordinance to apply only to receptacles soliciting donations to charitable causes. *Id.* at 328 ("The ordinance . . . . bans only those unattended, outdoor receptacles with an expressive message on a particular topic—*charitable solicitation and giving*." (emphasis added)).

Because St. John's ordinance targeted only those bins engaging in a specific kind of protected expression, it was content based. *Id.* at 328. As the court explained, the St. Johns ordinance "ban[ned] altogether an entire subclass of [bins] . . . with an expressive message protected by the First Amendment." *Id.* at 329–30. *Planet Aid* is instructive because it helps give meaning to the term "content" when we ask whether a law discriminates on the basis of content. In *Planet Aid*, the bins' message of charitable giving was viewed as "content" because it is a particular kind of protected speech.[4]

Another helpful example is seen in the Supreme Court's opinion in *Reed*, in which the plaintiffs challenged an ordinance distinguishing between "temporary directional signs," "political signs," and "ideological signs." 135 S. Ct. at 2227. The Court explained that such distinctions were based on content because each sign type represented a particular protected message:

> The restrictions in the Sign Code that apply to any given sign thus depend entirely on the communicative content of the sign. If a sign

---

[4] We also note that the *Planet Aid* court missed an important step in its analysis—it did not clarify whether a UDCB collecting charitable donations engages in pure speech or expressive conduct. For purposes of our analysis, we assume certain messages regarding charitable solicitation displayed on a bin constitute protected speech, but the bin itself is, at best—and this assumption is generous—expressive conduct rather than pure speech. *See Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999) ("Non-verbal conduct implicates the First Amendment when it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

informs its reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in an upcoming election, and both signs will be treated differently from a sign expressing an ideological view rooted in Locke's theory of government.  More to the point, the Church's signs inviting people to attend its worship services are treated differently from signs conveying other types of ideas.  On its face, the Sign Code is a content-based regulation of speech.

*Id.*

By contrast, here the Ordinance does not discriminate on the basis of any message—whether by targeting speech written on the boxes or by targeting the substantive content of the boxes' inherent expressive component.  It discriminates on the basis of non-expressive, non-communicative conduct. Although collecting donations to further charitable causes is "content" because it is "intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues," *Schaumburg*, 444 U.S. at 632, that is not the Ordinance's target.  Instead, the Ordinance regulates the unattended collection of personal items for distribution, reuse, and recycling, without regard to the charitable or business purpose for doing so.  That conduct is neither expressive nor communicative.

In this sense, the Ordinance is more similar to the law in *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994), which the Supreme Court held to be content neutral. There, cable companies challenged the "must-carry" provisions of the Cable Television Consumer Protection and Competition Act of 1992, which required "cable operators to carry the signals of a specified number of local broadcast television stations." *Id.* at 630. The Court explained that the requirement was content neutral because, despite "interfer[ing] with cable operators' editorial discretion by compelling them to offer carriage to a certain minimum number of broadcast stations," it did not "impose[] a restriction, penalty, or burden by reason of the views, programs, or stations the cable operator has selected or will select." *Id.* at 644–45. The same is true here: the purpose of, or message expressed by, RFC's UDCBs is irrelevant to whether they are subject to the Ordinance's requirements.

We recognize, as RFC argues, that the Ordinance burdens RFC's ability to erect UDCBs by, for example, limiting the locations in which it can operate UDCBs and imposing additional costs. And assuming, as we have, that RFC's charitable UDCBs implicate First Amendment protected expression, the zoning limitations would burden to a degree RFC's ability to express its protected charitable solicitation message. But those considerations alone do not make the Ordinance content based. Rather, to prove that the Ordinance is a content-based regulation of expressive conduct, RFC would have to show that the law applies to its UDCBs *because* the bins engage in charitable solicitation. *See Swisher*, 811 F.3d at 314 (noting a content-based restriction of symbolic speech "suppresses expression out of concern for its likely communicative impact" (quoting *Eichman*, 496 U.S. at 317)); *cf. Ward*, 491 U.S. at 791 ("A regulation that serves

purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").  On its face, the Ordinance does not do so.

In sum, the Ordinance restricts the boxes themselves, as collection devices for discarded material.  Although the function of the boxes requires that they contain a message explaining their function, the Ordinance is indifferent with regard to the nature of that explanation, the inducements provided for donations, or the uses to which the donations will be put.  The Ordinance is therefore content neutral to the extent it regulates speech or expressive activity at all.

Having concluded that the Ordinance is content neutral on its face, we must also ask whether there is evidence that Oakland passed the Ordinance with an intent to burden RFC's charitable message.  Strict scrutiny is the appropriate level of review if the Ordinance "cannot be justified without reference to" RFC's charitable message, or if the Ordinance "[was] adopted . . . because of disagreement with" RFC's charitable message.  *Reed*, 135 S. Ct. at 2227 (internal quotation marks omitted) (quoting *Ward*, 491 U.S. at 791).

During oral argument, RFC argued that the purpose of the Ordinance was to support brick-and-mortar charity organizations, that is, organizations that run manned storefronts.  RFC waived this argument because it never raised it in its briefs, other than in a terse one-sentence footnote. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. . . . [A] bare assertion does not preserve a claim . . ."); *Harger v. Dep't of Labor*, 569 F.3d 898, 904 n.9 (9th Cir. 2009) (argument

raised for first time during oral argument will not be considered). But even if we considered the merits of this argument, we would reject it. That Oakland intended to benefit charity organizations that operate in brick-and-mortar stores is not discrimination on the basis of RFC's message. Rather, it discriminates based on *how* RFC solicits charitable donations. Because RFC does not demonstrate how the operation of UDCBs, rather than operation of a brick-and-mortar store, is connected with its message of charitable solicitation, this argument does not demonstrate an intent to discriminate on the basis of content. *See Leathers v. Medlock*, 499 U.S. 439, 449 (1991) (holding that a tax imposed on cable television operators but not print media was content neutral because, *inter alia*, there was no evidence that the speech expressed by the exempt media and non-exempt media "differ[ed] systematically in [their] message").

The record does not support the contention that Oakland passed the Ordinance with an intent to burden the message expressed by RFC's UDCBs. The Ordinance can be justified by "other considerations": the record suggests that the City Council enacted the Ordinance out of concern that UDCBs attract illegal dumping, scavenging, and graffiti, and had been placed in a manner that tended to harm the safety of drivers and pedestrians, and the Ordinance itself states that its purpose is to "promote the health, safety, and/or welfare of the public by providing minimum blight-related performance standards for the operation" of UDCBs, Oakland Mun. Code § 5.19.010. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48 (1986). Nor does RFC point to any evidence in the record that anyone in the Oakland City Council disagreed with RFC's message.

Because the Ordinance does not, by its terms, discriminate on the basis of content, and there is no evidence that Oakland enacted the Ordinance with an intent to burden RFC's message of charitable solicitation or out of any disagreement with that message, the Ordinance is content neutral.

## B

Having concluded that the Ordinance is content neutral,[5] we now consider whether it survives the intermediate scrutiny standard outlined in *O'Brien*. *See Wilson v. Lynch*, 835 F.3d 1083, 1096 (9th Cir. 2016). "Under *O'Brien*, 'a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Id.* (quoting *O'Brien*, 391 U.S. at 377). We hold that the Ordinance satisfies this level of scrutiny.

Oakland argues that it enacted the Ordinance to combat blight, illegal dumping, graffiti, and traffic impediments that endanger drivers and pedestrians. *See also* Oakland Mun. Code § 5.19.010. These efforts are within the constitutional power of the government and constitute a substantial governmental interest. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) ("Nor can there be

---

[5] Again, we assume for the purposes of this decision that the Ordinance affects RFC's ability to engage in a form of protected expression related to charitable solicitation.

substantial doubt that the twin goals . . . [of] traffic safety and the appearance of the city[ ]are substantial governmental goals."). The regulation of UDCB placement and upkeep plainly serves these stated interests. By their nature, unattended bins invite blight, illegal dumping, and graffiti issues. And, as discussed above, these interests are unrelated to the suppression of the UDCB operators' speech.

Finally, the means by which the Ordinance pursues Oakland's goal of combating the negative impacts associated with UDCBs are "narrowly tailored." In the context of content-neutral laws challenged under the First Amendment, a regulation may be narrowly tailored even though it is "not . . . the least restrictive or least intrusive means" of pursuing the substantial governmental interest. *Ward*, 491 U.S. at 798. "[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation . . . . [and s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* at 799–800 (internal quotation marks omitted).

The Ordinance combats blight, illegal dumping, and graffiti by requiring a thousand feet of distance between UDCBs operations. As explained in the Interim City Administrator's report, "clustering of UDCBs can create the appearance of an informal dumping area and attract unintended items such as couches, appliances, and electronics." The report also explains that such distances requirements are common to prevent secondary effects produced by other kinds of operations that generate waste or are the focus of "undesirable, nuisance-related activities." The thousand-feet-distance requirement is not substantially broader than necessary to achieve the goal of combating

blight, dumping, and graffiti, and without that requirement, those negative secondary effects would be worse. The same is true for the traffic-related dangers. The Ordinance combats traffic-related negative secondary effects by requiring that UDCBs only be placed in particular areas so as to accommodate the truck traffic required for maintenance.

While RFC argues that these location restrictions will significantly decrease their UDCB operations, the Administrator's report explains, "there are still reasonable opportunities to site new UDCBs in more appropriate locations." We agree with the district court that reasonable alternative avenues of communication for RFC to express its message of charitable solicitation remain in Oakland. RFC may continue to operate UDCBs pursuant to the Ordinance's requirements, and it also may solicit charitable donations in ways other than operating an unattended collection box. *See Young v. City of Simi Valley*, 216 F.3d 807, 817 (9th Cir. 2000). Finally, the evidence does not suggest that the initial or annual licensing fees are designed to do anything other than defray administrative costs. Such fees do not facially violate the First Amendment. *See Kaplan v. Cty. of Los Angeles*, 894 F.2d 1076, 1081 (9th Cir. 1990); *see also Kwong v. Bloomberg*, 723 F.3d 160, 165–66 (2d Cir. 2013).

In sum, the Ordinance plainly serves important governmental interests unrelated to the suppression of protected speech. The Ordinance is sufficiently narrowly tailored and leaves alternative avenues of communication for RFC to express its message. The district court did not err in concluding that RFC is unlikely to succeed on the merits of its First Amendment claim.

## IV

On appeal, RFC argues that it will suffer irreparable harm on the sole ground that it will experience a "loss of First Amendment freedoms." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Because we hold that RFC did not demonstrate that it is likely to succeed on the merits of its First Amendment claim, we need not address RFC's irreparable harm argument. We note, however, that the argument is derivative of RFC's assertion that it is likely to succeed on the merits.

## V

Assuming the Oakland Ordinance implicates protected speech or expressive conduct, it is not content based and survives intermediate scrutiny. RFC has not shown that it is likely to succeed on the merits of its First Amendment claim.

**AFFIRMED.**