FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LONE STAR SECURITY AND VIDEO,
INC., a California corporation,
*Plaintiff-Appellant*,

v.

CITY OF LOS ANGELES; CITY OF
SANTA CLARITA; CITY OF RANCHO
CUCAMONGA; CITY OF LOMA LINDA,
*Defendants-Appellees*.

No. 14-55014

D.C. No.
2:11-cv-02113-
ODW-MRW

SAMI AMMARI, an individual,
*Plaintiff-Appellant*,

v.

CITY OF LOS ANGELES,
*Defendant-Appellee*.

No. 14-55050

D.C. No.
2:12-cv-04644-
ODW-MRW

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted March 11, 2016
Pasadena, California

Filed July 7, 2016

Before: Stephen Reinhardt, Mary H. Murguia,
and John B. Owens, Circuit Judges.

Opinion by Judge Murguia;
Concurrence by Judge Owens

## SUMMARY[*]

### Constitutional Law

Affirming the district court's summary judgment in favor
of defendant municipalities, the panel held that five city
ordinances regulating mobile billboards withstood First
Amendment scrutiny as content-neutral, reasonable, time,
place, and manner restrictions on speech.

One of the ordinances limited the type of sign that could
be affixed to motor vehicles parked or left standing on public
streets, and the others prohibited non-motorized, "mobile
billboard advertising displays" within city limits.

Distinguishing *Reed v. Town of Gilbert*, 135 S. Ct. 2218
(2015), the panel held that the ordinances were content
neutral. The panel concluded that the word "advertising" did
not render the ordinances content based on their face, and the
ordinances regulated the manner, not the content, of affected
speech. The panel held that the ordinances were narrowly

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

tailored to significant government interests in traffic control, public safety, and aesthetics. In addition, the ordinances left open adequate alternative opportunities for advertising.

Concurring in the majority's opinion, Judge Owens wrote that the Supreme Court should take a second look at *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984), because if "aesthetics" are to play a part in speech restriction, then they should apply equally to all unattractive signs or decals.

---

## COUNSEL

George M. Wallace (argued), Wallace, Brown & Schwartz, Pasadena, California, for Plaintiffs-Appellants.

Kimberly A. Erickson (argued), Deputy City Attorney; Ronald S. Whitaker, Assistant City Attorney; Thomas H. Peters, Chief Assistant City Attorney; Michael N. Feuer, City Attorney; Office of the City Attorney, Los Angeles, California, for Defendant-Appellee City of Los Angeles.

Joseph P. Buchman (argued), Brian A. Pierick, and Joseph M. Montes, City Attorney; Burke, Williams & Sorensen LLP, Los Angeles, California, for Defendant-Appellee City of Santa Clarita.

Richard E. Holdaway (argued), City Attorney, Robbins & Holdaway, Ontario, California, for Defendant-Appellee City of Loma Linda.

Jules S. Zeman, Kevin M. Osterberg, Melinda Carrido, and Vangi M. Johnson; Haight Brown & Bonesteel LLP, Los Angeles, California; for Defendant-Appellee City of Rancho Cucamonga.

## OPINION

MURGUIA, Circuit Judge:

These consolidated appeals concern the constitutionality of five city ordinances that regulate mobile billboards. One of the ordinances limits the type of sign that may be affixed to motor vehicles parked or left standing on public streets; the other ordinances prohibit non-motorized, "mobile billboard advertising displays" within city limits. Appellants, who have been subject to enforcement under the ordinances, brought suit against the municipalities arguing that the mobile billboard laws impermissibly restrict their freedom of speech in violation of the First Amendment. We have jurisdiction under 28 U.S.C. § 1291, and we review *de novo* the district court's grant of summary judgment in favor of the municipalities. We hold that the ordinances withstand First Amendment scrutiny as content-neutral, reasonable, time, place, and manner restrictions on speech. *See Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009). We affirm.

## BACKGROUND

Between 2010 and 2012, the California Legislature enacted a series of amendments to the Vehicle Code empowering local municipalities to regulate mobile billboards, which the Legislature found to blight city streets,

endanger residents, and reduce available on-street parking.[1] *See* Assemb. B. 2756, 2009–2010 Reg. Sess. (Cal. 2010); *see also* Assemb. B. 1298, 2011–2012 Reg. Sess. (Cal. 2011); Assemb. B. 2291, 2011–2012 Reg. Sess. (Cal. 2012). The new sections of the Vehicle Code authorized cities to adopt laws penalizing the parking of portable, non-motorized, wheeled vehicles that carry signs and are "for the primary purpose of advertising"—known as "mobile billboard advertising displays." *See* Cal. Veh. Code §§ 395.5, 21100(m), 22651(v). The enabling legislation also allowed cities to regulate motor vehicles bearing "advertising signs" that are not "permanently affixed" and that "extend beyond the overall length, width, or height of the vehicle." *See id.* § 21100(p)(2). Under the Vehicle Code, an advertising sign is "permanently affixed" if it is "[p]ainted directly on the body of a motor vehicle" or "[a]pplied as a decal." *Id.* § 21100(p)(3). In sum, these code sections authorized cities to regulate two types of mobile billboard advertising: advertisements affixed to portable, *non-motorized*, wheeled vehicles ("non-motorized mobile billboards"), and advertisements attached to *motorized* vehicles ("motorized mobile billboards").

In response, the cities of Los Angeles, Santa Clarita, Rancho Cucamonga, and Loma Linda passed virtually identical ordinances banning one or both types of mobile

---

[1] Under California law, a vehicle can be removed and impounded only when that action is expressly authorized by the California Vehicle Code. Cal. Veh. Code § 22650 ("It is unlawful for any peace officer . . . to remove any unattended vehicle from a highway to a garage or to any other place, except as provided in this code. . . ."). Before 2010, impounding a legally parked vehicle because it was a mobile billboard was not authorized by the California Vehicle Code, and thus exceeded local governments' authority.

billboards and permitting public officials to exact civil penalties and impound vehicles sporting signs that violate the ordinances. The cities' ordinances mirror and explicitly reference the California Legislature's amendments to the Vehicle Code. For example, section 87.54 of the Los Angeles Municipal Code (the "motorized mobile billboard ordinance") provides, in pertinent part:

> A motor vehicle may contain advertising signs that are painted directly upon or are permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle. Advertising signs that are painted directly upon or permanently affixed to a motor vehicle shall not be painted directly upon or permanently affixed in such a manner as to make the motor vehicle unsafe to be driven, moved, parked or left standing on any public street or public lands in the City. Motor vehicles that pose a safety hazard shall be impounded pursuant to [the] California Vehicle Code . . . .

L.A. Mun. Code § 87.54 (2012). The other four ordinances (the "non-motorized mobile billboard ordinances") make it unlawful to park a "mobile billboard advertising display" on any public street within city limits. *See* L.A. Mun. Code § 87.53 (2013); Loma Linda Mun. Code § 10.36.070 (2011); Rancho Cucamonga Mun. Code § 10.52.080 (2011); Santa Clarita Mun. Code § 12.84 (2011). The non-motorized mobile billboard ordinances all incorporate the definition of

"mobile billboard advertising display" codified at California Vehicle Code section 395.5: "advertising display[s]" that are attached to non-motorized vehicles, carry a sign or billboard, and are "for the primary purpose of advertising."

Appellants Lone Star Security & Video, Inc. and Sami Ammari own mobile billboards that are subject to the cities' bans. Lone Star Security operates a fleet of standalone trailers that were specially constructed to display signs or banners, which Lone Star Security uses to advertise its burglary alarm services as well as other products and political causes. Ammari promotes his Los Angeles-based businesses by bolting signs to motor vehicles that he parks on city streets. After the ordinances took effect, Lone Star Security and Ammari brought suit alleging that the mobile billboard bans are facially invalid because they abridge the freedom of speech guaranteed by the First Amendment. Lone Star Security specifically challenges the cities' prohibition on *non-motorized* mobile billboard advertising displays, whereas Ammari's case concerns the constitutionality of Los Angeles's regulation of mobile billboards on parked, *motorized* vehicles.

Lone Star Security was last before this court in 2013, when a panel affirmed the district court's denial of a preliminary injunction blocking the cities from enforcing the non-motorized mobile billboard ordinances. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, No. 12-56333 (9th Cir. Mar. 21, 2013). Upon remand, the district court consolidated Lone Star Security's case with Ammari's, who had filed his complaint shortly before Lone Star Security's first appeal. On cross-motions for summary judgment, the district court concluded that the mobile billboard bans were content-neutral, reasonable, time, place, and manner

restrictions on speech that did not violate the First Amendment. Accordingly, the court entered judgment in favor of the cities and against Lone Star Security and Ammari. These appeals followed.

## DISCUSSION

The First Amendment, as applied to the states through the Fourteenth Amendment, prohibits state and local governments from enacting laws "abridging the freedom of speech." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. Const. amend. I). Certain types of speech regulations are presumptively invalid, including laws that "target speech based on its communicative content. *Id.* These kinds of regulations are strictly scrutinized and will be upheld only if "they are narrowly tailored to serve compelling state interests." *Id*. Laws affecting speech in traditional public fora like sidewalks and city streets are also presumptively invalid, *Long Beach Area*, 574 F.3d at 1020–22, 1024, although the government may impose reasonable time, place, and manner restrictions on speech in traditional public fora so long as the restrictions are content neutral, are "narrowly tailored to serve a significant governmental interest," and "leave open ample alternative channels for communication of the information." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

The cities bear the burden of proving the constitutionality of the ordinances at issue. *See United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). Because Appellants raise facial challenges to the municipal ordinances, we will strike down the mobile billboard

regulations if they are "unconstitutional in every conceivable application," or if they "seek[] to prohibit such a broad range of protected conduct that [they are] unconstitutionally overbroad." *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)).  The parties have stipulated to the facts in this case, so  "the only question we must determine is whether the district court correctly applied the law." *EEOC  v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003) (citation omitted).

## I.  Content Neutrality

The parties concede that all of the ordinances at issue bear upon interests that the First Amendment protects.  Thus, we consider first whether the regulations are content neutral or content based.[2] *See Reed*, 135 S. Ct. at 2226–27.

A regulation is content based if, "on its face," it "draws distinctions based on the message a speaker conveys." *Id.* at

---

[2] In affirming the denial of a preliminary injunction to Lone Star Security, a panel of this court found that the non-motorized mobile billboard ordinances are content neutral.  The panel relied on our holding in *Reed v. Town of Gilbert* ("*Reed I*"), 587 F.3d 966 (9th Cir. 2009), which concluded that a sign regulation restricting the size, duration, and location of directional signs was content neutral. *Id.* at  977; *accord Reed v. Town of Gilbert* ("*Reed II*"), 707 F.3d 1057, 1069–70 (9th Cir. 2013).  That holding, however, was later overruled by the Supreme Court. *See Reed*, 135 S. Ct. at 2232.  Therefore, we revisit the content neutrality of the mobile billboard bans in light of the Supreme Court's decision in *Reed*. *See United States v. Bad Marriage*, 439 F.3d 534, 540 (9th Cir. 2006) (explaining that the law of the case need not be followed when "intervening controlling authority makes reconsideration appropriate" (citation omitted)).

2227. A regulation that defines regulated speech by a particular subject matter or that discriminates between viewpoints is plainly content based. *Id.* at 2227, 2230. For example, the Supreme Court recently held that an ordinance that imposed more stringent restrictions on signs directing the public to a church meeting than on "political" signs was content based. *See id.* at 2232. In addition, an ostensibly viewpoint-neutral law is content based if it was "adopted by the government because of disagreement with the message the speech conveys." *Id.* at 2227 (internal quotation marks and alterations omitted).

By its terms, the motorized billboard ordinance regulates the way in which "advertising signs" may be affixed to motor vehicles on city streets. The non-motorized billboard ordinances likewise apply to "mobile billboard advertising displays" within the meaning of California Vehicle Code section 395.5, which includes as part of the definition that the vehicle be "for the primary purpose of advertising." Neither the California Vehicle Code nor the mobile billboard ordinances define "advertising," however, and Appellants insist that the ordinances are content based because they distinguish between billboards that "advertise" and all other signs, such as those that do not advertise. Appellants' argument, in essence, is that the only signs that "advertise" are those that propose a commercial transaction.[3]

---

[3] Appellants have not directly challenged the mobile billboard laws on the grounds that they unduly restrict "commercial speech" in the constitutional sense—in fact, Lone Star Security objects that the ordinances affect his ability to convey political messages regarding local elected officials or ballot proposals using mobile billboards. Nevertheless, Appellants appear to overwhelmingly conflate "advertising" speech with "commercial speech," which refers to speech that "does 'no more than propose a commercial transaction.'" *See Coyote Pub., Inc. v. Miller*,

We disagree that the word "advertising" renders the challenged regulations content based on their face. In the context of mobile billboard regulations, the California Court of Appeal has already recognized that the word "advertising" refers to the activity of displaying a message to the public, not to any particular content that may be displayed. In *Showing Animals Respect & Kindness v. City of West Hollywood*, the California Court of Appeal rejected a constitutional challenge to a nearly identical municipal ban on mobile billboard advertising displays after finding that the ordinance was content neutral.[4] *See* 166 Cal. App. 4th 815, 819–20, 83 Cal. Rptr. 3d 134, 137–38 (2008). The plaintiff in that case was a non-profit organization that used mobile billboards—accompanied with loudspeaker announcements— to protest animal cruelty. The California Court of Appeal concluded that West Hollywood's "advertising" ban was

---

598 F.3d 592, 598 (9th Cir. 2010). But, although laws that restrict only commercial speech are content based, *see Reed III*, 135 S. Ct. at 2232, such restrictions need only withstand intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980) (requiring that laws affecting commercial speech seek to implement a substantial governmental interest, directly advance that interest, and reach no further than necessary to accomplish the given objective).

[4] West Hollywood Municipal Code section 11.44.020 states: "It is unlawful for any person to conduct, or cause to be conducted, any mobile billboard advertising upon any street, or other public place within the city in which the public has the right of travel. . . . Mobile billboard advertising includes any vehicle, or wheeled conveyance which carries, conveys, pulls, or transports any sign or billboard for the primary purpose of advertising." However, the ordinance exempted from the prohibition the following: "[a]ny vehicle which displays an advertisement or business identification of its owner, so long as such vehicle is engaged in the usual business or regular work of the owner, and not used merely, mainly or primarily to display advertisements," as well as buses and taxicabs. *Id.*

content neutral because it did not differentiate between categories of speech:

> The term "advertise" is not limited to calling the public's attention to a product or a business. The definition of "advertise" is more general: "to make something known to[;] . . . to make publicly and generally known[;] . . . to announce publicly *esp[ecially] by a printed notice or a broadcast* . . . ." (Merrian [*sic*]–Webster's Collegiate Dict. (10th ed., 1995) p. 18; italics added.) Thus, although the subject of the matter brought to notice may be commercial, it is not necessarily so. Messages endorsing a political candidate, a social cause or a religious belief would also fall within the term "advertise."

*Id.* at 819–20, 83 Cal. Rptr. 3d at 138.  The California Court of Appeal further noted that the ordinance defined "mobile billboard advertising" as "any vehicle or wheeled conveyance which carries, conveys, pulls, or transports any sign or billboard," and reasoned that these active verbs demonstrated that "the ordinance [was] concerned with the speaker's acts, not the content of the speech."  *Id.* at 823, 83 Cal. Rptr. 3d at 140–41.

In evaluating a facial challenge we "must consider the [municipality's] authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992); *see also Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (holding that we defer to a state court's interpretation of its own laws unless that interpretation is

"untenable or amounts to a subterfuge to avoid federal review of a constitutional violation"). We will "follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Owen ex. rel Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)). The definition of "advertising" that the California Court of Appeal articulated in *Showing Animals Respect* is neither untenable nor an obvious subterfuge to avoid federal review. *See* 166 Cal. App. 4th at 819–20, 83 Cal. Rptr. 3d at 138 (holding that the term "advertising" applies to both commercial and noncommercial speech). Therefore, absent convincing evidence that the California Supreme Court would construe the term "advertise" in this situation differently, we cannot depart from the construction of the California Court of Appeal; neither Appellant offers such evidence. Accordingly, we hold that the mobile billboard bans regulate the manner—not the content—of affected speech. The ordinances address only the types of sign-bearing vehicles subject to regulation, and discriminate against prohibited billboards on the basis of their size and mobility alone, and are thus content neutral. Even a regulated vehicle bearing a blank sign could conceivably violate the ordinances.

The Supreme Court's recent decision in *Reed* does not alter our conclusion.[5] Unlike *Reed*, the mobile billboard ordinances do not single out a specific subject matter for

---

[5] In *Reed*, Justice Alito, joined by Justices Kennedy and Sotomayor, wrote separately to opine that rules regulating the "size of signs" or "the locations in which signs may be placed," including rules that "distinguish between free-standing signs and those attached to buildings" would not be content based. 135 S. Ct. at 2233 (Alito, J., concurring).

differential treatment, nor is any kind of mobile billboard exempted from regulation based on its content. There has been no suggestion that the ordinances apply differently to Lone Star Security's political endorsements than to its commercial promotional campaigns, for example. Rather, an officer seeking to enforce the non-motorized billboard ordinances must decide only whether an offending vehicle constitutes a prohibited "advertising display" because its primary purpose is to display messages, as opposed to transporting passengers or carrying cargo. *Cf. S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998) (holding that a county ordinance that prohibited canvassing on public streets and sidewalks within the Las Vegas resort district was content based, for First Amendment purposes, because any officer seeking to enforce the ordinance would need to examine the contents of a leaflet to determine whether the ordinance prohibited its distribution). In the case of the motorized billboard ordinance, an enforcing officer would simply need to distinguish between signs that are permanent or non-permanent, and larger or smaller than the vehicles to which the signs are affixed to determine whether the vehicle violates the ordinance. *See id*. Therefore, the district court appropriately found the ordinances to be content neutral.

## II.  Narrowly Tailored to a Significant Government Interest

The parties do not dispute that the cities' stated interests in traffic control, public safety, and aesthetics are sufficiently weighty to justify content-neutral, time, place, or manner restrictions on speech, nor could they. The Supreme Court and this Court have repeatedly confirmed that local governments may exercise their police powers to advance these goals by prohibiting intrusive or unsightly forms of

expression. *See Taxpayers for Vincent*, 466 U.S. at 808; *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1072–73 (9th Cir. 2006).  Instead, we focus on whether the mobile billboard regulations are narrowly tailored to the cities' interests.

A speech regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (citation omitted).  The fact that "the government's interest could be adequately served by some less-speech-restrictive alternative" will not invalidate an otherwise reasonable time, place, or manner restriction "[s]o long as the means chosen are not substantially broader than necessary." *Id.* at 800.

None of the ordinances in this case are "substantially broader than necessary" to accomplish the cities' goals of eliminating visual blight and promoting the safe and convenient flow of traffic.  Controlling case law compels our conclusion that the cities' interest in aesthetics alone justifies the ordinances.  *See Taxpayers for Vincent*, 466 U.S. at 808 (holding that a total restriction on a certain type of visual advertising is narrowly tailored because, by banning the type of signs that the city determined to constitute "visual clutter and blight," the city "did no more than eliminate the exact source of the evil it sought to remedy").  Under this binding precedent, it is therefore enough that the Appellees believed that the advertising displays prohibited by the mobile billboard regulations detract from the cities' overall appearance; the outright ban directly serves this stated interest.

Further, by removing from city streets vehicles that have no purpose other than advertising, the mobile billboard regulations are narrowly tailored to the cities' interests in parking control and reducing traffic hazards. Because the utility of mobile billboards stems from owners' ability to park them for periods of hours or days at a time, they reduce available on-street parking. Non-motorized mobile billboards are also likely to impair pedestrians' and drivers' visibility and pose a safety risk to motorists who are forced to veer around them into the next lane of traffic to bypass them. And, they may roll onto the roadway after being parked.

In addition, the motorized billboard ordinance serves Los Angeles's asserted interest in public safety by prohibiting non-permanently affixed signs and permanently affixed signs that are larger than the dimensions of a vehicle. Temporary signs, by their nature, are impermanent and thus pose a greater danger to pedestrians and motor vehicles because of the risk that they will come detached.[6] Signs larger than the dimensions of the vehicle are also more likely to obstruct traffic and impede drivers' field of vision. For instance, some of Ammari's billboards blocked the side and rear windows of his vans, reducing the operator's ability to see passing cars, pedestrians, or other roadside hazards.

The cities' goals would be achieved less effectively absent the challenged regulations. *See Ward*, 491 U.S. at 799. Mobile billboards are difficult to control precisely

---

[6] The City of Los Angeles offered another rationale for § 87.54—that temporary signs pose a safety risk when the vehicle is "driven during high wind conditions." As § 87.54 is a parking ordinance, driving-related safety risks are not sufficiently narrowly tailored to justify the speech restrictions imposed by the regulation.

because they can be moved in and out of a jurisdiction with ease.  As the Supreme Court has noted, if a municipality "has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508 (1981).

## III.  Alternatives

Lastly, to satisfy the First Amendment, a time, place, and manner regulation must "leave open ample alternative channels for communication."  *Clark*, 468 U.S. at 293. "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). However, "a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Taxpayers for Vincent*, 466 U.S. at 812.

The mobile billboard ordinances leave open adequate alternative opportunities for advertising. The challenged regulations foreclose only one form of expression—mobile billboards—by placing limited restrictions on the types of vehicles to which mobile billboards may be affixed (vehicles whose primary purpose is something other than advertising), and the manner in which billboard advertisements can be displayed on a motor vehicle (in a permanent fashion and no larger than the dimensions of the vehicle).  Appellants are free to disseminate their messages through myriad other channels, such as stationary billboards, bus benches, flyers, newspapers, or handbills.  Appellants may also paint signs on vehicles and attach decals or bumper stickers.  Although

mobile billboards are a unique mode of communication, nothing in the record suggests that Appellants' overall "ability to communicate effectively is threatened." *Taxpayers for Vincent*, 466 U.S. at 812.  Therefore, given the ample alternative modes of advertising available in the Appellee cities, we will not invalidate the mobile billboard bans merely because they restrict Appellants' preferred method of communication.  *Id.*; *G.K. Ltd. Travel*, 436 F.3d at 1074.  The remaining alternatives for expressive conduct are sufficient to vindicate Appellants' First Amendment interests.

Because the mobile billboard ordinances are content neutral, narrowly tailored to serve the governments' significant aesthetic and safety interests, and leave open ample alternative channels of communication, the judgment of the district court is **AFFIRMED**.

---

OWENS, Circuit Judge, concurring:

I concur in the majority's opinion, as it faithfully follows the current controlling case law.  I write separately because, in my view, the Supreme Court should take a second look at an important aspect of *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984).

This case is about ugly signs on vehicles, and no doubt I would not want these vehicles and their signs parked in front of my house.  But under the ordinances at issue, a car with equally ugly decals—including a decal of a vehicle with an ugly sign—would not "go to jail," but instead treat my curb like the upper left corner of a Monopoly board.

If "aesthetics" are to play a part in speech restriction, then such aesthetics should apply equally, decal or sign. Yet under *Taxpayers for Vincent*, the Court rejected the very point that I now make. *See* 466 U.S. 810–12 (rejecting the Ninth Circuit's holding that "a prohibition against the use of unattractive signs cannot be justified on esthetic grounds if it fails to apply to all equally unattractive signs wherever they might be located"). I think our court was right then, and the Supreme Court should reconsider this portion of *Taxpayers for Vincent*. As it currently stands, politicians can use *Taxpayers for Vincent* and its beholderish "aesthetics" to covertly ensure homogeneous thinking and political discourse. That is a dimension we should avoid. *See The Twilight Zone: Eye of the Beholder* (CBS television broadcast Nov. 11, 1960).