ACCEPTED
03-14-00375-CV
12936746
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/27/2016 6:07:11 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00375-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/27/2016 6:07:11 PM
JEFFREY D. KYLE
Clerk

AUSPRO ENTERPRISES, LP,
*Appellant,*
v.
TEXAS DEPARTMENT OF TRANSPORTATION,
*Appellee.*

On Appeal from the
345th Judicial District Court of Travis County, Texas

## APPELLEE'S MOTION FOR REHEARING

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General
State Bar No. 24040931

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697
matthew.frederick
   @texasattorneygeneral.gov

COUNSEL FOR APPELLEE

# TABLE OF CONTENTS

Table Of Authorities.................................................................... iii

I. This Case Does Not Implicate Commercial Speech, and Neither Does *Reed*...................................................................3

    A. Commercial Speech Does Not Raise the Same Constitutional Concerns as AusPro's Political Speech...........................................................................3

    B. *Reed* Does Not Subject Regulations of Commercial Speech to Strict Scrutiny. ..............................................5

    C. AusPro's Challenge to the Act Does Not Extend to Regulation of Commercial Speech. .............................11

II. Severability Principles Require the Court to Preserve the Act as It Applies to Commercial Speech. .......................13

    A. The Texas Legislature Intended to Regulate Commercial Speech.................................................14

    B. The Act Can Be Executed in a Manner that Complies with Federal Law and Avoids the Potential Loss of More than $300 Million in Federal Highway Funds. ............................................16

Prayer .......................................................................................19

Certificate of Service ................................................................21

Certificate of Compliance..........................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agostini v. Felton,*
521 U.S. 203 (1997).................................................................................19

*Ayotte v. Planned Parenthood of N. New England,*
546 U.S. 320 (2006).................................................................................17

*Bates v. State Bar of Arizona,*
433 U.S. 350 (1977)............................................................................ 4, 13

*Boelter v. Hearst Commc'ns, Inc.,*
2016 WL 3369541 (S.D.N.Y. June 17, 2016).........................................10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980)........................................................... 4, 5, 11, 16

*Citizens for Free Speech, LLC v. City of Alameda,*
114 F. Supp. 3d 952 (N.D. Cal. 2015)....................................................10

*Citizens United v. Fed. Elec. Comm'n,*
558 U.S. 310 (2010)...................................................................................3

*City of Cincinnati v. Discovery Network, Inc.,*
507 U.S. 410 (1993).....................................................................................5

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986).......................................................................................8

*Contest Promotions, LLC v. City & Cnty. of San Francisco,*
2015 WL 4571564 (N.D. Cal. July 28, 2015) ............................... 10–11

*CTIA—The Wireless Assoc. v. City of Berkeley,*
139 F. Supp. 3d 1048 (N.D. Cal. 2015) ...........................................9–10

*Davidson Cnty. v. Elrod,*
232 S.W.2d 1 (Tenn. 1950)......................................................................17

*Geeslin v. State Farm Lloyds,*
255 S.W.3d 786 (Tex. App..—Austin 2008, no pet.) ........................... 14

*Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion,* 2016 WL 2941329 (S.D. Ind. May 20, 2016)......................... 10

*Lamar Central Outdoor, LLC v. City of Los Angeles,*
245 Cal. App. 4th 610 (2016) ....................................................... 11

*Lone Star Security & Video, Inc. v. City of Los Angeles,*
827 F.3d 1192 (9th Cir. 2016)....................................................... 10

*Lotze v. Washington,*
444 U.S. 921 (1979)........................................................................ 7

*Markham Advertising Co. v. Washington,*
393 U.S. 316 (1969)........................................................................ 7

*Marks v. United States,*
430 U.S. 188 (1977)........................................................................ 9

*Mass. Assoc. of Private Career Schs. v. Healey,*
159 F. Supp. 3d 173 (D. Mass. 2016)............................................ 10

*Members of the City Council v. Taxpayers for Vincent,*
466 U.S. 789 (1984)..................................................................... 7–8

*Metromedia, Inc. v. City of San Diego,*
453 U.S. 490 (1981)........................................... 3, 6, 7, 9, 18

*Newman Signs, Inc. v. Hjelle,*
440 U.S. 901 (1979)........................................................................ 7

*Northland Family Planning Clinic, Inc. v. Cox,*
487 F.3d 323 (6th Cir. 2007).......................................................... 17

*Ohralik v. Ohio State Bar Ass'n,*
436 U.S. 447 (1978)......................................................................... 4

*Peterson v. Village of Downers Grove,*
2016 WL 427566 (N.D. Ill. Feb. 4, 2016) ....................................... 10

*Pruett v. Harris Cnty. Bail Bond Bd.*,
   249 S.W.3d 447 (Tex. 2008) ............................................................. 16

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) ........................................................... *passim*

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
   490 U.S. 477 (1989) ......................................................................... 19

*Rose v. Doctors Hospital*,
   801 S.W.2d 841 (Tex. 1990) ........................................................... 15

*Second Amendment Arms v. City of Chicago*,
   135 F. Supp. 3d 743 (N.D. Ill. 2015) ............................................. 10

*Suffolk Outdoor Advertising Co. v. Hulse*,
   439 U.S. 808 (1978) ........................................................................... 7

*Texas Dep't of Transp. v. Barber*,
   111 S.W.3d 86 (Tex. 2003) ............................................................... 8

*Thomas v. Schroer*,
   127 F. Supp. 3d 864 (W.D. Tenn. 2015) ..................................... 9, 17

*United States v. Salerno*,
   481 U.S. 739 (1987) ......................................................................... 13

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
   *Inc.*, 425 U.S. 748 (1976) ................................................................ 4

*Valentine v. Chrestensen*,
   316 U.S. 52 (1942) ............................................................................. 4

**Statutes and Rules**

23 U.S.C. § 131(b) ..................................................................................... 1

Tex. Gov't Code § 311.032(c) ................................................................. 15

Tex. Transp. Code
   §§ 391.001–430.001 ............................................................................. 2
   § 391.001(10) ..................................................................................... 14

v

§ 391.001(12) ..................................................................... 14

§ 391.252 ............................................................................ 16

§ 391.252(a)(1)..................................................................... 17

Tex. R. App. P. 49.9 ............................................................... 13

**Other Authorities**

Brief for the United States as Amicus Curiae Supporting
Petitioners, *Reed v. Town of Gilbert*, 135 S. Ct. 2218
(2015) (No. 13-502), 2014 WL 4726504 ............................................. 18

U.S. Department of Transportation, Federal Highway
Administration, Notice 4510.788: Apportionment of
Federal-Aid Highway Funds for Fiscal Year (FY) 2015
Pursuant to the Highway and Transportation Funding
Act of 2014, as Amended tbl.1 (Aug. 14, 2015) ................................. 1–2

No. 03-14-00375-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

AUSPRO ENTERPRISES, LP,
*Appellant,*

v.

TEXAS DEPARTMENT OF TRANSPORTATION,
*Appellee.*

On Appeal from the
345th Judicial District Court of Travis County, Texas

**APPELLEE'S MOTION FOR REHEARING**

TO THE HONORABLE THIRD COURT OF APPEALS:

The panel's opinion provides for a sweeping remedy that invalidates
two subchapters of the Texas Transportation Code, thereby prohibiting
state regulations on commercial speech and putting ten percent of the
State's federal highway funding—more than $300 million—at risk. *See*
23 U.S.C. § 131(b).[1] This case does not call for such a broad remedy

---

[1] The Federal Highway Administration apportioned more than $3.3 billion in federal-aid highway funds to the State of Texas for fiscal year 2015. *See* U.S. Department of Transportation, Federal Highway Administration, Notice 4510.788: Apportionment of Federal-Aid Highway Funds for Fiscal Year (FY) 2015 Pursuant to the Highway

because AusPro's claims and *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), do not implicate commercial speech.

The panel's opinion correctly recognizes that "because Auspro's speech here is unquestionably noncommercial, this case, like *Reed*, does not implicate commercial speech considerations." Opinion at 5 n.10. The remedy, however, directly implicates commercial-speech considerations because it invalidates Subchapters B and C of the Texas Highway Beautification Act (the "Act"), Tex. Transp. Code §§ 391.001–430.001, and related regulations entirely, even as applied to commercial speech. A ban on regulation of commercial speech goes beyond the controversy in this case, the injury alleged by AusPro, and the Supreme Court's decision in *Reed*.

The Texas Department of Transportation seeks panel rehearing on the panel's remedy. The Department does not ask the Court to revisit its holding that the Act violates the First Amendment as it applies to political speech like AusPro's. It requests only that the Court modify its opinion and judgment to enjoin the application of Subchapters B and C

---

and Transportation Funding Act of 2014, as Amended tbl.1 (Aug. 14, 2015), https://www.fhwa.dot.gov/legsregs/directives/notices/n4510788/n4510788_t1.cfm

2

to noncommercial speech and allow those provisions of the Act to stand as they apply to commercial speech. That result is congruent to AusPro's claim, faithful to Supreme Court precedent, and consistent with the reasoning of the Court's opinion.

## I. THIS CASE DOES NOT IMPLICATE COMMERCIAL SPEECH, AND NEITHER DOES *REED*.

### A. Commercial Speech Does Not Raise the Same Constitutional Concerns as AusPro's Political Speech.

Because the Act applies to both commercial and noncommercial speech, it implicates two distinct First Amendment doctrines. Noncommercial speech—including political and ideological speech—receives the highest level of constitutional protection. *E.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (quotation marks omitted)); *cf.* CR.62 ("This case involves core political speech, which is at the heart of the First Amendment . . . ."). Commercial speech, on the other hand, traditionally received *no* First Amendment protection. *See, e.g.*, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505 (1981) ("Prior to 1975, purely commercial advertisements of services or goods for sale were

3

considered to be outside the protection of the First Amendment." (citing *Valentine v. Chrestensen*, 316 U.S. 52, 62 (1942))). The Supreme Court has since held that the First Amendment applies to commercial speech, but with the caveat that "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562–63 (1980). This reflects "the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Id.* (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)).

Content-based regulation of commercial speech does not raise the same constitutional concerns as similar regulation of noncommercial speech. Indeed, the very notion of "commercial speech" implies a content-based determination. *See, e.g.*, *Bates v. State Bar of Arizona*, 433 U.S. 350, 363 (1977) ("If commercial speech is to be distinguished, it 'must be distinguished by its content.'" (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976))). Accordingly, the Supreme Court has noted that particular "features of commercial

speech permit regulation of its content," whereas "[i]n most other contexts, the First Amendment prohibits regulation based on the content of the message." *Central Hudson*, 447 U.S. at 564 n.6.

## B. *Reed* Does Not Subject Regulations of Commercial Speech to Strict Scrutiny.

In *Reed*, the Supreme Court rewrote the rules for claims involving content-based regulation of noncommercial speech. There, the plaintiffs challenged certain provisions of a municipal ordinance that set different standards for different kinds of noncommercial speech. *See Reed*, 135 S. Ct. at 2224; *cf.* CR.67 (arguing that the Act's election-sign exemption is content-based because it reflects "a governmental preference for speech concerning traditional 'elections' over other political speech unrelated to an election"). Under then-current doctrine, intermediate scrutiny applied because the challenged provisions did not betray an effort to target particular viewpoints or messages. *See, e.g.*, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428 (1993) (discussing cases approving time-place-and-manner restrictions "provided that they are adequately justified without reference to the content of the regulated speech" (quotation marks omitted)). But the Supreme Court changed course, holding that the town's content-based rules were subject to strict

scrutiny regardless of the underlying motive. *Reed*, 135 S. Ct. at 2228 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." (quotation marks omitted)). The Department recognizes that in the wake of *Reed*, the Act is subject to strict scrutiny insofar as it creates content-based regulations on noncommercial speech, including the political speech at issue here.

But *Reed* did not overrule *Central Hudson* or *Metromedia*, and it did not change the rules that apply to regulations on commercial speech. The majority opinion in *Reed* implicitly limited the scope of its holding when it declined to mention, much less overrule, previous cases upholding content-based regulations of commercial speech. In *Metromedia*, for example, seven Justices concluded that the city's interest in preventing visual clutter justified a prohibition on billboards. 453 U.S. at 507–08, 510 (plurality opinion of White, J., joined by Stewart, Marshall, and Powell, JJ.); *id.* at 552 (Stevens, J., dissenting in part); *id.* at 559–61 (Burger, C.J., dissenting); *id.* at 570 (Rehnquist, J., dissenting). *Metromedia* declined to overrule the Supreme Court's earlier

decision in *Suffolk Outdoor Advertising Co. v. Hulse*, 439 U.S. 808 (1978), summarily dismissing an appeal from a judgment sustaining "a municipal ordinance that distinguished between offsite and onsite billboard advertising, prohibiting the former and permitting the latter," *Metromedia*, 453 U.S. at 498. The ordinance in question defined "billboard" to mean "[a] sign which directs attention to a business, commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such sign is displayed." *Id.* at 499 (quotation marks omitted). By summarily disposing of the case, the Supreme Court made a decision on the merits "rejecting the submission . . . that prohibiting offsite commercial advertising violates the First Amendment." *Id.* at 498–99. *Metromedia* declined to overrule other summary decisions upholding facial and as-applied challenges to similar state laws. *See id.* at 499 (citing *Lotze v. Washington*, 444 U.S. 921 (1979); *Newman Signs, Inc. v. Hjelle*, 440 U.S. 901 (1979); *Markham Adver. Co. v. Washington*, 393 U.S. 316 (1969)). And in *Members of the City Council v. Taxpayers for Vincent*, the Court reaffirmed *Metromedia*, holding that "the visual assault . . . presented by an accumulation of signs posted on

public property" constituted "a significant substantive evil within the City's power to prohibit," 466 U.S. 789, 806–07 (1984).

Confirming the limits on the majority's holding, Justice Alito wrote separately to provide examples of laws that would not be subject to strict scrutiny under the Court's decision. *See Reed*, 135 S. Ct. at 2233 (Alito, J., concurring, joined by Kennedy and Sotomayor, JJ.). The concurrence's non-exhaustive list included two examples with special relevance to this case: "Rules distinguishing between the placement of signs on commercial and residential property"; and "Rules distinguishing between on-premises and off-premises signs." *Id.*; *cf. Texas Dep't of Transp. v. Barber*, 111 S.W.3d 86, 99–102 (Tex. 2003) (upholding the Act's distinction between on-premise and off-premise signs because it regulates signs based on location and does not discriminate against any viewpoint or subject matter); *id.* at 101 ("The state has simply recognized that the right to advertise an activity conducted on-site is inherent in the ownership or lease of the property.").[2] Because Justice Alito's concurrence

---

[2] *Reed* abrogates the Texas Supreme Court's alternative holding in *Barber*—that "the Act is also content neutral because it is '*justified* without reference to the content of the regulated speech.'" *Barber*, 111 S.W.3d at 100 & n.83 (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)).

represents the views of three members of the six-Justice majority, it is essential to the meaning of *Reed. Cf. Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of the five justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (quotation marks omitted).

Consistent with the Supreme Court's commercial-speech cases and Justice Alito's concurrence, lower courts have recognized that *Reed* does not undermine the commercial-speech doctrine.[3] The Northern District of California, for instance, cautioned that "[t]he Supreme Court has clearly made a distinction between commercial speech and noncommercial speech, *see, e.g.*, *Central Hudson . . .*, and nothing in its recent opinions, including *Reed*, even comes close to suggesting that that

---

[3] The Western District of Tennessee's interpretation of *Reed* at the preliminary-injunction stage, *see Thomas v. Schroer*, 127 F. Supp. 3d 864 (W.D. Tenn. 2015), carries no persuasive weight to the contrary for at least two reasons. First, it did not consider a regulation on commercial speech. *See id.* at 869 (referring to "billboards and signs displaying noncommercial content"). Second, it ignored Supreme Court decisions upholding distinctions between on- and off-premise signs. *Cf., e.g.*, *Metromedia*, 453 U.S. at 498–99. Had the district court devoted more attention to the issue, it could not have dismissed Justice Alito's cautionary instructions as "unsupported conclusions." *Thomas*, 127 F. Supp. 3d at 873.

well-established distinction is no longer valid." *CTIA—The Wireless Ass'n v. City of Berkeley*, 139 F. Supp. 3d 1048, 1061 (N.D. Cal. 2015); *see also Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) ("[A]lthough laws that restrict only commercial speech are content based, *see Reed*[], 135 S. Ct. at 2232, such restrictions need only withstand intermediate scrutiny."); *Mass. Ass'n of Private Career Sch. v. Healey*, 159 F. Supp. 3d 173, 194 (D. Mass. 2016) (rejecting argument that *Reed* overturned commercial-speech doctrine and holding that "at most, the appropriate level of First Amendment scrutiny . . . is intermediate scrutiny under *Central Hudson*").[4] Similarly, the California

---

[4] *See also, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, Nos. 15 Civ. 3934, 15 Civ. 9279, 39342016 WL 3369541, at \*9 n.10 (S.D.N.Y. June 17, 2016) (noting that the Supreme Court "has not explicity overturned the decades of jurisprudence holding that commercial speech, and speech like it—which, inherently, requires a content-based distinction—warrants less First Amendment protection. . . . The Court will not take that leap here."); *Geft Outdoor LLC v. Consol. City of Indianapolis & Cnty. of Marion*, No. 1:15-cv-01568, 2016 WL 2941329, at \*10 (S.D. Ind. May 20, 2016) ("Few courts have had occasion to address it post-*Reed*, but the majority of courts that have considered the question have held that the holding in *Reed* is limited to noncommercial sign regulations and does not alter or otherwise affect precedent relating to municipal regulations of commercial signs."); *Peterson v. Vill. of Downers Grove*, No. 14 C 09851, 2016 WL 427566, at \*4 (N.D. Ill. Feb. 4, 2016) ("Absent an express overruling by the Supreme Court of *Central Hudson*, which clearly applies to commercial speech like [plaintiff]'s signs, *Central Hudson* must be deemed to apply here."); *Second Amendment Arms v. City of Chicago*, 135 F. Supp. 3d 743, 755 (N.D. Ill. 2015) (applying intermediate scrutiny to dismiss a First Amendment challenge to city ordinance banning the display of "firearms or ammunition in [any] window"); *Citizens for Free Speech, LLC v. City of Alameda*, 114 F. Supp. 3d 952, 968–69 (N.D. Cal. 2015) (applying intermediate scrutiny after determining that the challenged ban on billboards applied only to commercial speech); *Contest Promotions, LLC v. City &*

Court of Appeals has held that commercial-speech doctrine remains in force after *Reed. See Lamar Central Outdoor, LLC v. City of Los Angeles*, 245 Cal. App. 4th 610, 625 (2016) ("*Reed* did not cite *Metromedia*[] either, so *Reed* certainly did not overrule or disapprove that precedent.").

Under the Supreme Court's discrete commercial-speech doctrine, regulation of commercial speech receives intermediate scrutiny even though it is inherently content-based. *See, e.g.*, *Central Hudson*, 447 U.S. at 564 n.6. *Reed* did not mention the Court's commercial-speech doctrine, let alone overrule it. Commercial speech simply was not before the Court.

## C. AusPro's Challenge to the Act Does Not Extend to Regulation of Commercial Speech.

AusPro has not challenged the Act as it applies to commercial speech, nor could it. AusPro has no reason to challenge the Act's regulation of commercial advertisements because it does not complain that its own commercial speech has been restricted. Without an injury to

---

*Cnty. of San Francisco*, No. 15-cv-00093, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015) ("Because *Reed* does not abrogate prior case law holding that laws which distinguish between on-site and off-site commercial speech survive intermediate scrutiny, the Court holds that its prior analysis continues to control the fate of plaintiff's First Amendment claim.").

its own interest in commercial speech, AusPro could not establish standing to challenge the Act as applied to commercial speech.

AusPro has consistently disclaimed any challenge to the Act's regulation of commercial speech. It explained to the district court:

> The speech that we're talking about in this particular case, Your Honor, is this sign. It's maybe not the most beautiful sign, but it is a sign that I think we all can agree is core political speech. It does not relate to the sale of any product. It does not relate to anything that is being marketed on the premise. It is a core political statement.

2.RR.18. Although AusPro changed its approach significantly on appeal, it has not expanded its claim to attack commercial-speech regulations. In its opening brief, for instance, AusPro noted the "distinction between commercial and noncommercial speech" but stated, "Whether this distinction remains valid is not at issue in this case involving noncommercial political speech." Appellant's Opening Brief 21 & n.6.

Even if AusPro could argue that it attempted to challenge the Act as it applies to commercial speech, the Court has no basis to resolve that claim. First, the parties have not briefed *Reed*'s effect on commercial-speech doctrine or the application of intermediate scrutiny to the Act. Second, AusPro cannot rely on alleged injuries to third parties' commercial-speech rights, even in the guise of a facial challenge. Because

12

*Reed* does not address commercial-speech doctrine, it provides no basis to hold that every application of the Act against commercial speech is invalid. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 745 (1987) (explaining that in a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid"). AusPro cannot invoke overbreadth because that doctrine does not apply to commercial speech. *See Bates*, 433 U.S. at 381 ("[W]e decline to apply [the overbreadth doctrine] to professional advertising, a context where it is not necessary to further its intended objective."). As a result, even if *Reed* implied that the Act is unconstitutional in every application to noncommercial speech (which it does not[5]), it provides no support for a facial challenge to the Act as applied to commercial speech.

## II. SEVERABILITY PRINCIPLES REQUIRE THE COURT TO PRESERVE THE ACT AS IT APPLIES TO COMMERCIAL SPEECH.

Given the limits of *Reed* and of AusPro's claim, the Court was right to conclude that this case does not implicate commercial speech. That leaves two questions: Did the Legislature intend to regulate commercial

---

[5] By declining to revisit points the Court has already addressed, the Department does not waive or forfeit any arguments, including but not limited to arguments about *Reed*'s effect on the Act as applied to noncommercial speech. *See* Tex. R. App. P. 49.9.

speech; and is it possible to apply the Act to commercial speech without also regulating noncommercial speech? *See, e.g.*, *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 797 (Tex. App.—Austin 2008, no pet.) ("The goal of severability is to retain the valid portions and applications of a statute whenever possible"). The answer to both questions is yes. Severability allows the Court to protect AusPro's First Amendment rights while respecting the Legislature's intent to the greatest extent possible.

## A. The Texas Legislature Intended to Regulate Commercial Speech.

The plain text of the Act leaves no room to doubt that the Legislature intended to regulate commercial speech. Subchapters B and C apply to "outdoor advertising," which the Legislature defined to mean virtually any outdoor sign or display "designed, intended, or used to advertise or inform." Tex. Transp. Code § 391.001(10). That definition is obviously broad enough to include commercial advertisements offering goods or services. *Cf. id.* § 391.001(12) (defining "Specific information logo sign" as a subset of signs containing brand names of "commercial establishments" offering particular services).

Under Texas law, severability doctrine does not require courts to strike down a statutory provision when a particular application violates

14

the Constitution. On the contrary, the Code Construction Act provides expressly that unconstitutional *applications* of a statute must be severed so that the statute remains in force as applied in all other circumstances. Tex. Gov't Code § 311.032(c) ("[I]f any provision of the statute *or its application to any person or circumstance* is held invalid, the invalidity does not affect other provisions *or applications* of the statute that can be given effect without the invalid provision or application . . . .") (emphasis added); *cf. Rose v. Doctors Hospital*, 801 S.W.2d 841, 845–46 (Tex. 1990) (severing an application of the Medical Liability and Insurance Improvement Act's cap on "health care liability claims" to "common law claims," which was previously held to violate the Texas Constitution, and applying the statutory cap to the plaintiffs' wrongful death claim, which was created "by statute, not by the common law"). Here, insofar as the Act's content-based regulations violate the First Amendment as applied to noncommercial speech, those applications must be severed, and the Act must continue to apply to commercial speech.

**B. The Act Can Be Executed in a Manner that Complies with Federal Law and Avoids the Potential Loss of More than $300 Million in Federal Highway Funds.**

The Court's opinion shows that Subchapters B and C can be executed, as the Legislature intended, with respect to commercial speech. The Court declined to strike down Subchapter I, which prohibits off-premise signs adjacent to and visible from specific highways. *See* Tex. Transp. Code § 391.252. The Court explained that "the provisions in Subchapter I are not affected by our decision here because they authorize the State to regulate commercial speech along certain specified highways, specifically off-premise signs displaying messages regarding 'goods, services, or merchandise.'" Opinion 24–25; *id.* at 25 n.108 (citing *Central Hudson*, 447 U.S. at 563; *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 456 (Tex. 2008)). The severability doctrine required the Court to preserve Subchapter I because it could be "executed as the Legislature intended in the absence of the Act's outdoor-advertising regulations." *Id.* at 25. The same logic applies to Subchapters B and C as applied to commercial advertisements.[6]

_____

[6] To the extent *Thomas v. Schroer* might be thought to bear on the question, it merely shows that Tennessee law deviates from the general preference for severability. There, the district court recognized that courts generally seek to "avoid 'nullify[ing] more of a legislature's work than is necessary,' because doing so 'frustrates the intent

16

If Texas's severability doctrine requires the Court to preserve Subchapter I because it regulates commercial speech, it necessarily requires the Court to preserve Subchapters B and C as they apply to commercial speech, including off-premise commercial signs. But by invalidating Subchapters B and C in all their applications, the Court's opinion forbids the State to regulate commercial speech on Highway 71 but permits the State to regulate the same kind of speech on Highway 290. *Compare* Opinion 2 (noting that AusPro's sign was located on Highway 71) *with* Tex. Transp. Code § 391.252(a)(1) (prohibiting off-premise signs on specific roads, including Highway 290). That cannot be right. State regulation of commercial speech either conflicts with *Reed* or it doesn't. (It doesn't.) A regulation of commercial speech under Subchapter B is no less constitutional than a regulation of commercial speech under Subchapter I. If the Court's constitutional holding can

of the elected representatives of the people.' . . . For this reason where partial, rather than facial, invalidation is possible, it is the 'required course.'" *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 333 (6th Cir. 2007) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006)), *quoted in Thomas*, 127 F. Supp. at 875–76. But that general rule gave way in *Thomas* to the contrary presumption under Tennessee state law, which declared that "severance of unconstitutional portions of a statute is generally disfavored." *Id.* at 876 (citing *Davidson Cnty. v. Elrod*, 232 S.W.2d 1, 2–3 (Tenn. 1950)).

accommodate Subchapter I, it must also accommodate the application of Subchapters B and C to commercial advertisements. *Cf. Metromedia*, 453 U.S. at 521 n.26 ("Since our judgment is based essentially on the inclusion of noncommercial speech within the prohibitions of the ordinance, *the California courts may sustain the ordinance by limiting its reach to commercial speech*, assuming the ordinance is susceptible to this treatment.") (emphasis added).

Preserving Subchapters B and C as applied to commercial speech not only cures an internal conflict in the panel's opinion, it avoids an unnecessary risk to more than $300 million in federal highway funds. As the panel noted, Subchapter I is not mandated by federal law, but Subchapters B and C are. Opinion 25. The United States does not believe that the federal Highway Beautification Act contains the same constitutional flaws as the municipal code in *Reed*. *See* Brief for the United States as Amicus Curiae Supporting Petitioners, *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) (No. 13-502), 2014 WL 4726504, at *28– 34. If a specific provision or application of the Act is not clearly forbidden by *Reed*—and regulation of commercial speech is not—the Department's

failure to enforce the Act puts the State's highway funding in jeopardy. That risk is unnecessary and avoidable here.

Withholding judgment on Subchapters B and Cs' application to commercial speech also respects the Supreme Court's control over its own precedents. The Court has consistently cautioned lower courts that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). Insofar as Subchapters B and C apply to commercial speech, the Supreme Court's commercial-speech cases directly control. This Court should follow those cases and let the Supreme Court decide whether or not to overrule them.

## PRAYER

The Court should grant the petition for rehearing, vacate its opinion, withdraw its judgment, and issue a revised opinion and judgment holding that Subchapters B and C of the Texas Highway Beautification Act do not violate the First Amendment as applied to

19

commercial speech. That would preserve AusPro's interest, under *Reed*, in displaying noncommercial signs on its property. It would honor the Texas Legislature's intent—apparent on the face of the Act—to regulate commercial advertisements as required by the federal Highway Beautification Act and avoid the risk of losing more than $300 million in federal highway funds. It would follow the logic of the panel's opinion, which correctly upheld regulation of commercial advertisements under Subchapter I. And it would avoid unwarranted interference with the Supreme Court's commercial-speech doctrine, which was neither considered nor curtailed in *Reed*.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK
Deputy Solicitor General
State Bar No. 24040931

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697
matthew.frederick
@texasattorneygeneral.gov

COUNSEL FOR APPELLEE

**CERTIFICATE OF SERVICE**

On September 27, 2016, this motion was served via File & ServeXpress and e-mail on:

Meredith B. Parenti
PARENTI LAW PLLC
P.O. Box 19152
Houston, Texas 77224
[Tel] (281) 224-5848
[Fax] (281) 605-5677
meredith@parentilaw.com

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK
*Counsel for Appellee*

**CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 4,131 words as counted by the Microsoft Word 2010 word count utility, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK
*Counsel for Appellee*